171 N.J. Super. 325 (1979)
408 A.2d 1349
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROBERT HANNAH, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 19, 1979.
Decided November 21, 1979.
*326 Before Judges BISCHOFF, BOTTER and DWYER.
Burrell Ives Humphreys, Passaic County Prosecutor, attorney for appellant (Raymond R. Beam, Jr., Assistant Prosecutor, of counsel; Gary H. Schlyen, Assistant Prosecutor, on the letter brief).
Miles Feinstein, attorney for respondent.
John J. Degnan, Attorney General of New Jersey, attorney for amicus curiae State of New Jersey (Anthony J. Parrillo, Deputy Attorney General, on the letter brief; John J. DeCicco, Deputy Attorney General, of counsel).
Martin Klughaupt submitted a brief on behalf of amicus curiae The Passaic Daily News.
*327 James R. Acheson submitted a brief on behalf of amicus curiae The News Printing Co.
Jamieson, McCardell, Moore, Peskin & Spicer, attorneys for amicus curiae Trenton Times Corporation (Thomas C. Jamieson, Jr., and Frances Goldmark on the brief).
Winne, Banta, Rizzi & Harrington, attorneys for amicus curiae The Bergen Evening Record Corporation joined in the briefs filed on behalf of the Passaic County Prosecutor and the Trenton Times Corporation.
The opinion of the court was delivered by BISCHOFF, J.A.D.
This is an appeal by the State, with leave granted, from an order of the trial court granting defendant's application that "the pretrials or any pretrial hearings" in the case be held "in camera."
Defendant Robert Hannah stands indicted for the murder of his infant children Robayne and Romayne, alleged to have occurred on October 9, 1978. The matter of the closure of the pretrial proceedings to be conducted in the case was raised in open court November 5, 1979, following a discussion regarding the proposed voir dire of the jury panel.
Defense counsel asked that all proceedings be conducted in camera until the commencement of trial because he assumed the court's pretrial agenda would be complete and "there may be things which will be mentioned which [the judge] will reject or accept." He further argued that there may be matters discussed which a jury should not hear, but which may be reported in the papers and thus make it difficult to get a fair and unbiased jury. The assistant prosecutor joined in the application to "obviate any possibility of pretrial publicity against" either defendant or the State.
The trial judge, relying upon the fact that the application was made by defendant and joined in by the prosecutor, granted the application and said:

*328 I might note on the record, but out of the presence of the press, that I have been advised in chambers that there may be substantial issues regarding statements made by the defendant in this case and I did want to note that that was one of the reasons that I granted [sic] this application, because the introduction of statements in the newspaper, as opposed to introduction at trial, may be very inappropriate.
No other basis for the action of closure appears in the record.
Two days later, in open court, the trial judge stated he had been approached by three reporters who referred to the case of Gannett v. DePasquale, infra, and asked him (1) to conduct a hearing and (2) for the right to be heard on the closure order. At this point the assistant prosecutor stated he had been instructed by the prosecutor that it was the official policy of the prosecutor's office not to exclude the press from any pretrial hearings or trials unless there were extremely unusual circumstances requiring closure. The assistant prosecutor withdrew his "joinder" in defense counsel's request to exclude the press and he asked that "the press be permitted to view the entire course of proceedings including pretrial motions."
The trial judge, without taking any testimony or considering any exhibits, stated he had ruled to exclude the public and press for the following reasons:
(1) The application was limited to the pretrial hearings.
(2) Defendant alleged that disclosures during the pretrial hearings might make it difficult to select a fair and impartial jury and for defendant to receive a fair trial.
(3) Defense counsel represented that at the time of the incident substantial publicity existed in all local newspapers.
(4) The prosecutor's change in position was based on policy not reason.
(5) A large part of the pretrial proceedings would consist of a Miranda hearing and may include testimony on defendant's *329 mental faculties at the time he made the statements and could thus bear on the issue of sanity[1] which may be raised at trial.
(6) He took judicial notice of the fact that at the time of the incident there was extensive publicity concerning the basic facts of the case and that publicity concerning these basic facts and the court's recent rulings had commenced in the newspapers.
(7) Other issues had been raised and will continue to be raised which, if publicized, will have an adverse effect on the ability of the court and counsel to select a fair and impartial jury and for defendant to receive a fair trial. He specifically referred to the question of whether or not defendant would testify, the fact "that unpleasant and gruesome photographs" may be introduced into trial and discussion of possible questions to be presented to the jury during voir dire.
He thereupon continued the "order of non-access."
The State's application for leave to appeal from that order was granted. R. 2:3-1(b)(5).
We elected to consider the merits of the appeal and decide it on the papers submitted with the motion. R. 2:11-2; R. 2:8-3(b). All parties were advised of our intention to do so and were given an opportunity to file additional papers. We deemed the issues adequately covered by the papers submitted and, pursuant to R. 2:11-1, denied applications for oral argument.
Separate motions for leave to intervene were filed on behalf of The Passaic Daily News, the Trenton Times, The News Printing Co., The Bergen Evening Record Corporation and the Attorney General. We denied all motions to intervene but granted leave to the movants to file briefs amicus curiae, and we have considered the briefs that have been filed.
*330 Part of the problem presented by this appeal results from the fact that motions and pretrial proceedings were conducted with trial imminent. If proper motion practices were followed, R. 3:10, there would be sufficient time between motion proceedings and trial to permit public attention to subside. Nebraska Press Ass'n v. Stewart, 427 U.S. 539, 564, 96 S.Ct. 2791, 2793-2805, 49 L.Ed.2d 683, 700 (1976).
The record before us is understandably deficient, for at the time the application for closure was made to the trial judge, the prosecutor joined in it because he thought the case was unique and fell into "the 1% of cases" where pretrial publicity would be damaging to the defendant's right to a fair trial. We are informed through defendant's brief that after the trial judge entered his order of closure on November 5, 1979, he participated in several days of in camera proceedings and was therefore familiar with the potential for prejudice of defendant's rights. However, we are deprived of the opportunity of appellate review as to the sufficiency of his reasons for entering the order under review.
The record presented to us is barren of any facts supporting the trial judge's closure order. That order was entered, according to the record, upon (1) the unsupported assertion of defense counsel that without such an order defendant's right to a fair and impartial trial would be prejudiced, and (2) the court's judicial notice of some newspaper publicity at the time of the incident and again when trial became imminent.
Defendant preliminarily challenges the right of the prosecutor to maintain this appeal, contending that the right to a public trial is personal to the accused. Defendant relies on Art. I, par. 10 of the N.J. Constitution (1947) and the majority opinion in the case of Gannett v. DePasquale, ___ U.S. ___, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), as support for that position. We disagree. The clear public policy in this State is that all proceedings be conducted in open court. R. 1:2-1. Further, the public has a right to expect that criminal trials will be conducted *331 in open court. State v. Allen, 73 N.J. 132, 144 (1977). While the case of Gannett v. DePasquale, supra, suggests that consideration should be given to defendant's personal Sixth Amendment rights, that, by no means, deprives the prosecutor of standing to seek vindication of the State's public policy respecting open trials.
It is clear that under the Sixth Amendment to the U.S. Constitution a defendant in a criminal prosecution has a right to a "speedy and public trial, by an impartial jury." The Supreme Court of the United States has recently recognized that a defendant may under certain circumstances waive this right to a public trial and have certain pretrial evidentiary proceedings held in camera. Gannett v. DePasquale, supra, ___ U.S. at ___, 99 S.Ct. at 2916, 61 L.Ed.2d at 635; see, also, State v. Allen, supra 73 N.J. at 145. While the extent of the right of the court to exclude the press and public from pretrial evidentiary proceedings is not completely clear, Gannett v. DePasquale, supra, it is clear that a defendant's application for closure of pretrial evidentiary proceedings must meet three preconditions:
(1) There must be a "clear showing of a serious and imminent threat to the integrity of the trial." State v. Allen, supra at 145. Mr. Justice Powell, in his concurring opinion in Gannett v. DePasquale, supra, ___ U.S. at ___, 99 S.Ct. at 2916, 61 L.Ed.2d at 635, stated that a defendant seeking closure must "make some showing that the fairness of his trial will likely be prejudiced by public access to the proceedings."
(2) The court must first consider all available alternatives and conclude they are not feasible or proper under the circumstances. State v. Allen, supra, 73 N.J. at 145[2].
*332 (3) The order of closure should be no more extensive than the circumstances fairly require.
The record presented to us fails to provide a factual basis from which the court could conclude that a substantial probability of harm to defendant's right to a fair trial would result from providing normal, public access to the pretrial proceedings. See State v. Carter, 143 N.J. Super. 405, 409 (App.Div. 1976). Defendant failed to produce any evidence of a serious and imminent threat to the integrity of the trial, apart from some newspaper publicity which is normally incident to a murder trial.
Further, it is clear to us that the trial court did not (at least on the record) consider available alternatives. Moreover, under any view, the order entered excluding the public from all pretrial proceedings was overbroad, for there are surely many pretrial proceedings which could be conducted in open court without harm to the defendant's right to a fair trial. Consistent with a defendant's right to a speedy trial, a continuance or other means may be employed when necessary to protect against adverse publicity.
We therefore vacate the verbal order of the trial judge closing all pretrial proceedings to the public and press. We recognize the obligation of the court and the prosecutor to protect the societal interest in an open trial and to be sensitive to the due process rights of the defendant to a fair trial. Gannett v. DePasquale, supra ___ U.S. at ___, 99 S.Ct. at 2905, at 621. Therefore, our ruling is without prejudice to the right of defendant to renew his application should demonstrable facts and circumstances warrant such action.
The matter is remanded to the trial court for further proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] This issue is the subject of a motion and may be heard before trial in any event. N.J.S.A. 2A:163-2.
[2] For a discussion of available alternatives, see State v. Allen, supra at 141-142, 145, concurring opinion of Justice Pashman at 160-161; Gannett v. DePasquale, dissenting opinion of Justice Blackmun, ___ U.S. ___, 99 S.Ct. 2937, 61 L.Ed. 660; Nebraska Press Ass'n v. Stewart, 427 U.S. 539, 553-564, 96 S.Ct. 2800-2805, 49 L.Ed.2d 683, 694-700 (1976).