**In re UNITED STATES ex rel. the PULITZER PUBLISHING COMPANY and Edward H. Kohn, Petitioners.**

No. 80–1957.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1980.
Decided Nov. 25, 1980.

Michael P. Casey, Evans, Hoemeke, Casey & Daly, St. Louis, Mo., for Pulitzer Pub. Co., et al.

Kathianne Knaup, Asst. U. S. Atty., St. Louis, Mo., for United States.

Leonard J. Frankel, Clayton, Mo., for Elizabeth Weigand.

Paul J. Passanante, St. Louis, Mo., for Stephen Poludniak.

Before ROSS, Circuit judge, GIBSON, Senior Circuit Judge, and HENLEY, Circuit Judge.

ROSS, Circuit Judge.

On October 14, 1980, the Honorable H. Kenneth Wangelin, Chief Judge of the United States District Court for the Eastern District of Missouri, commenced voir dire examination of veniremen in open court for the trial of *United States v. Poludniak and Weigand.* In this criminal action two defendants have been charged with the attempted extortion of money from United States Senator Thomas Eagleton of Missouri. After conducting part of the voir dire in the courtroom, the trial judge announced that he would close portions of the voir dire to the public and examine veniremen individually in his chambers. Closure was ordered on the motion of the defendants which was not opposed by the United States. Judge Wangelin did not state for the record his reasons for closure of the proceedings at this stage of the trial. He did indicate, however, that he intended to ask prospective jurors whether they would be unduly influenced by the testimony of Senator Eagleton and whether the veniremen had any bias toward the Church of Scientology. The church had been mentioned in connection with the alleged extortion plot, one of the defendants having been a member of that church.

On October 15, 1980, petitioners filed this petition for a writ of mandamus in accordance with 28 U.S.C. § 1651. This panel of the court asked Judge Wangelin to discontinue conducting in–chambers voir dire until such time as this court had an opportunity to consider the matter. Two hours later, this court convened in the presence of the attorneys for the petitioner, the respondent, the attorney for the United States, and the

attorneys for the defendants in the criminal action from which petitioners' claim is derived. At the hearing the petitioners asserted their position that the closure of voir dire proceedings constituted denial of access to the press and the public in violation of the petitioners' first amendment guarantees of freedom of speech and press. Respondent contended that he believed the responses by prospective jurors, if available to other potential jurors or if made public, would have influenced or prejudiced other prospective jurors. It was respondent's contention that publication of these comments would have adversely affected the remainder of the selection procedure.

After hearing all parties' respective legal positions and considering the relevant facts and law pertinent to this case, this court entered the following order:

This matter came on for hearing this 15th day of October, 1980, at 1:30 p. m. upon the petition for writ of mandamus filed by the petitioners set forth above. Present in the courtroom were the attorneys for the petitioner, the respondent, the attorney for the United States, and the attorneys for the defendants in the criminal action from which petitioners' claim is derived. ⟨

All parties presented to the court their respective legal positions and their understanding of the relevant facts. This court has considered the case based upon the facts presented and under the law on the subject as set forth in *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) and *Richmond Newspapers, Inc. v. Virginia*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and with the express consent of all the parties described in the first paragraph, we enter the following order:

1. The in–chamber voir dire of the prospective jurors, held to the exclusion of the public and the press, was inappropriate for the following reasons:

The trial judge did not inquire or attempt to find an alternate solution which would have met the need to ensure fairness; there was no recognition on the record of any right for the public or press to attend that part of the trial held in chambers; and most importantly, the trial judge made no findings on the record to support closure as required by *Richmond Newspapers, Inc. v. Virginia, supra*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).

2. We order that the balance of the voir dire be held in open proceedings and further direct that a copy of the transcript of the proceedings held in chambers be filed with the Clerk of the District Court as soon as possible and made available to the public, including the press.

3. We direct that the district judge insert into the record at the conclusion of voir dire, his reasons for holding a part of the voir dire examination of prospective jurors in chambers. This shall include his reasoning in weighing the interests of a fair trial with the right of the public to attend the trial.

4. A written opinion will be prepared and filed at a later date.

The Clerk shall distribute a copy of this order, which constitutes a judgment on the merits of the case, to counsel for petitioners, respondent, the United States and the defendants in the district court trial in which the questioned procedure took place.

We believe that this case is governed by the law as set forth in *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) and *Richmond Newspapers, Inc. v. Virginia*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In *Gannett*, the Supreme Court considered whether members of the public have an independent constitutional right of access under the sixth amendment to a pretrial judicial proceeding even though the accused, the prosecution, and the trial judge agreed to the closure of that proceeding in order to assure a fair trial. The Court held that the sixth amendment's guarantee to the accused of a public trial gave neither the public nor the press an enforceable right of access to a *pretrial* suppression hearing. The Court did

not decide whether the first and fourteenth amendments guarantee to the public a right to attend trials.

Several factors influenced the Court in *Gannett* to conclude that the trial judge had properly ordered the closure of the pretrial proceeding. Despite the failure of any of the spectators to object to the defendants' motion for closure, they were given an opportunity to be heard and to raise such objections at a proceeding. After plenary consideration of the rights of both the defendants and the public, the trial court found that the defendants' right to a fair trial, under the circumstances of that case, outweighed the constitutional right of access of the press and the public. Moreover, any denial of access was temporary and a transcript of the suppression hearing was made available once the danger of prejudice to the defendants had dissipated.

In *Richmond*, the Supreme Court considered whether a criminal trial could be closed to the public upon the unopposed request of a defendant,[1] without any demonstration that closure was necessary to protect the defendant's right to a fair trial, or that some other overriding consideration required closure. The Supreme Court held "that the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'" *Richmond Newspapers, Inc. v. Virginia, supra,* —— U.S. ——, 100 S.Ct. 2814, at 2829, 65 L.Ed.2d 973. Of significant importance to the Court in ordering the opening of the trial was the fact that "the trial judge made no findings to support closure; no inquiry was made as to whether alternative solutions would have met the need to insure fairness; there was no recognition of any right under the Constitution for the public or press to attend the trial." *Richmond Newspapers, Inc. v. Virginia, supra,* —— U.S. ——, 100 S.Ct. 2814, at 2829–30, 65 L.Ed.2d 973.

Our sole reason for granting the writ in this case is based on the failure of the district judge to announce his reasons for the decision to close the voir dire proceedings and for his failure to balance the right of the public to attend the trial against the right of the defendant to a fair trial in accordance with the principles announced in *Richmond Newspapers, Inc. v. Virginia, supra,* —— U.S. ——, 100 S.Ct. 2814, at 2829–30, 65 L.Ed.2d 973.[2] As in *Richmond*, "[t]he explicit, guaranteed rights to speak and to publish concerning what takes place at a trial would lose much meaning if access to observe the trial could, as it was here, be foreclosed arbitrarily." *Id.* 100 S.Ct. at 2827.

The Supreme Court in *Richmond* made clear that parts of a criminal trial may be

---

1. *Richmond* makes it clear that the agreement of the *parties* to close the trial should not affect the decision of the trial court in ruling on a closure motion.

2. The trial judge made such findings, after the conclusion of the voir dire examination, in compliance with our order issued in this case. In his order, the trial judge noted that he closed the voir dire proceedings "to prevent the answer of any one juror from influencing the thinking of other jurors, * * * [and] to allow the jurors to express themselves freely with candor and without fear of retaliation. While the effects of the first situation could be avoided by instructing the jurors not to read newspaper accounts of the examination of jurors, the second situation can not be cured in that manner. The very presence of the press and the public during this questioning of the jurors could impede their free expression of any biases or prejudices and no alternative solution would meet the need to insure that the jurors answer the questions openly and truthfully."

We are not criticizing Judge Wangelin for closing the proceedings. However, absent findings as required in *Richmond Newspapers, Inc. v. Virginia,* —— U.S. ——, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980), we may not uphold closure of the voir dire proceedings. Indeed, the Report of the Judicial Conference Committee on the Operation of the Jury System on the "Free Press–Fair Trial" Issue suggests that the questioning of each juror in the judge's chambers may satisfy ABA standard 8–3.5(a) of the "Standards Relating to the Administration of Justice: Free Press and Fair Trial." *See Report of the Judicial Conference Committee on the Operation of the Jury System on the "Free Press–Fair Trial" Issue,* —— F.R.D. —— (1980).

closed to the public. Thus, the rule forbidding closure of a criminal trial "[a]bsent an overriding interest articulated in findings" is not absolute. *Id.* 100 S.Ct. at 2830. The Court noted that it had "no occasion here to define the circumstances in which all or parts of a criminal trial may be closed to the public, * * * but our holding today does not mean that the First Amendment rights of the public and representatives of the press are absolute. * * * so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial. '[T]he question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge ... the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.' " *Richmond Newspapers, Inc. v. Virginia, supra,* —— U.S. ——, 100 S.Ct. 2814, at 2830, n.18, 65 L.Ed.2d 973.

Prior to the closure the district court failed to articulate any findings which would indicate any balancing by the court of the defendants' rights to a fair trial against the right of the public of access to a criminal trial. We specifically do not decide whether it would have been permissible to close portions of the voir dire examination to the public had the trial judge inserted his findings on the record prior to closing the trial.

In sum, we find that the in–chambers voir dire of the jurors was inappropriate in the absence of an inquiry as to alternate solutions; in the absence of a recognition of any right under the Constitution for the public or press to attend the voir dire examination proceedings; and most importantly, in the absence in the record of any articulated reasons for and balancing of the interests of the public in access to an open court against the rights of the parties to a fair trial as required by *Richmond Newspapers, Inc. v. Virginia, supra,* —— U.S. ——, 100 S.Ct. 2814, at 2829–30, 65 L.Ed.2d 973.

GIBSON, Senior Circuit Judge, concurring in result.

This case presents this court with the opportunity to spell out the standards of closure to be applied in criminal cases. In order to provide some guidance to the trial courts when future closure requests are made, I write separately to articulate the standards which I believe should be applied.

The plurality opinion of Chief Justice Burger in *Richmond Newspapers, Inc. v. Virginia,* —— U.S. ——, ——, 100 S.Ct. 2814, 2830, 65 L.Ed.2d 973 (1980) (opinion of Burger, C. J.), articulated a broad standard to be applied in deciding closure issues. Chief Justice Burger stated that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." (Footnote omitted.) Justice Blackmun, in his opinion concurring in result, commented upon the uncertainty of this statement:

> I need do no more than observe that uncertainty marks the nature–and strictness–of the standard of closure the Court adopts. The plurality opinion speaks of "an overriding interest articulated in findings," *ante,* [100 S.Ct.] at 2830; Mr. Justice STEWART reserves, perhaps not inappropriately, "reasonable limitations," *ante,* [100 S.Ct.] at 2840; Mr. Justice BRENNAN presents his separate analytical framework; Mr. Justice POWELL in *Gannett* was critical of those Justices who, relying on the Sixth Amendment, concluded that closure is authorized only when "strictly and inescapably necessary," 443 U.S., at 399–400, 99 S.Ct., at 2915, and Mr. Justice REHNQUIST continues his flat rejection of, among others, the First Amendment avenue.

*Richmond Newspapers, supra,* —— U.S. at ——, 100 S.Ct. at 2842 (Blackmun, J., concurring in result).

I believe now is the time to provide more precise guidance in order to avoid confusion at the trial level and to obviate the need for interlocutory appeals on the closure issue.

After a careful reading of the Supreme Court's opinion in *Richmond Newspapers,* I believe this court should extend the standards for closure announced in *United States v. Powers,* 622 F.2d 317, 322–23 (8th

Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 112, 66 L.Ed. 44 (1980), to cases where the prosecution and defense agree on closure.

In *Powers,* we adopted the standard outlined in Justice Blackmun's dissent in *Gannett Co. v. DePasquale,* 443 U.S. 368, 440–42, 99 S.Ct. 2898, 2935–2937, 61 L.Ed.2d 608 (1980) (Blackmun, J., dissenting), and applied the standard to "the limited case where the defendant seeks closure without the consent of the prosecution." *Powers, supra,* 622 F.2d at 323. We found that "[t]he norm and presumption of the sixth amendment is that a trial should be a public proceeding. *Gannett,* 443 U.S. at 385, 99 S.Ct. at 2908." *Id.* We buttressed this finding on the historical tradition of open trials and the important societal interests which it serves. *See id.* Subsequently, the Supreme Court in *Richmond Newspapers, supra,* —— U.S. at —— – ——, 100 S.Ct. at 2821–26, has reaffirmed our belief in the correctness of this position. However, in *Powers* we specifically expressed no opinion on whether the first amendment provided an independent right of access to criminal trials on the basis of the first and fourteenth amendments. *Powers, supra,* 622 F.2d at 321 n.3, 324.

In light of the Supreme Court's finding that the right to attend criminal trials is implicit in the guarantees of the first amendment in *Richmond Newspapers, supra,* —— U.S. at ——, 100 S.Ct. at 2829, I see no reason to limit the criteria for closure announced in *Powers* to only cases where the prosecution opposes closure. In *Powers* we held that an accused who seeks closure must " '*establish that it is strictly and inescapably necessary* in order to pro-

tect the fair trial guarantee' [*Gannett, supra*] 443 U.S. at 440, 99 S.Ct. at 2936 [Blackmun, J., dissenting] (emphasis added)." *Powers, supra,* 622 F.2d at 322.[1]

In adopting Justice Blackmun's test, we noted that he would apply his test regardless of the consent or nonconsent of the prosecutor. *Id.* at 323; *see Gannett, supra,* 443 U.S. at 445, 99 S.Ct. at 2939. Justice Blackmun articulated a number of reasons for a broad application:

> I thus reject the suggestion that the defendant alone may determine when closure should occur. I also reject any notion that the decision whether to permit closure should be in the hands of the prosecutor on the theory that he is the representative of the public's interest. It is in part the public's interest in observing the conduct of the prosecutor, and the police with whom he is closely associated, that the public–trial provision serves. To cloak his own actions or those of his associates from public scrutiny, a prosecutor thus may choose to close a hearing where the facts do not warrant it. Moreover, prosecutors often are elected, and the public has a strong interest, as noted, in observing the conduct of elected officials. In addition, the prosecutor may fear reversal on appeal if he too strenuously resists the motion of a defendant to close a hearing. Conversely, a prosecutor may wrap in the mantle of the public interest his desire to disseminate prejudicial information about an accused prior to trial, and so resist a motion to close where the circumstances warrant some restrictions on access. I thus am unwilling to commit to the discretion of the prosecutor, against whose own misconduct or incom-

---

1. Under the "strictly and inescapably necessary" standard, we again adopted Justice Blackmun's three–prong test and required:

> The accused who seeks closure should establish * * * the following:

> First, he should provide an adequate basis to support a finding that there is a substantial probability that irreparable damage to his fair trial right will result from conducting the proceeding in public.

> \* \* \* \* \* \*

> Second, the accused should show a substantial probability that alternatives to clo-

sure will not protect adequately his right to a fair trial.

> \* \* \* \* \* \*

> Third, the accused should demonstrate that there is a substantial probability that closure will be effective in protecting against the perceived harm.

*Powers, supra,* 622 F.2d at 322–23, *quoting Gannett, supra,* 443 U.S. at 441–42, 99 S.Ct. at 2937 (Blackmun, J., dissenting). *See also* 28 C.F.R. § 50.9, 28 Crim.L.Rptr. 2146 (Nov. 5, 1980).

petence the public–trial requirement is designed in part to protect, the decision as to whether an accused's motion to close will be granted.

*Id.*

This case, as well as the *Richmond Newspapers* case, *see id.,* —— U.S. at ——, n.3, 100 S.Ct. at 2842 n.3 (Blackmun, J., concurring in result), demonstrates that the public interest may not be fully protected by the participants in the litigation. For whatever reason, the prosecutor in this case consented to closure in a potentially politically sensitive case involving a United States senator who was up for reelection. The criteria to be applied by the trial court should, therefore, be the same regardless of whether the prosecutor consents or not.