UNITED STATES of America, Plaintiff,

v.

Laurence John LAYTON, Defendant.

No. CR–80–0416 RFP.

United States District Court,
N. D. California.

July 23, 1981.

As Amended July 27, 1981.

G. William Hunter, U. S. Atty., San Francisco, Cal., Alan J. Sobol, Sp. Asst. U. S. Atty., Dept. of Justice, Crim. Div., Washington, D. C., Robert L. Dondero, Michael D. Nerney, Stanford Svetcov, Asst. U. S. Attys., San Francisco, Cal., for plaintiff United States.

James F. Hewitt, Federal Public Defender, Frank O. Bell, Jr., Chief Asst. Federal Public Defender, San Francisco, Cal., Tony Tamburello, San Francisco, Cal., for defendant Laurence John Layton.

ORDER

PECKHAM, Chief Judge.

This court must face the difficult issue of the conflict between the rights of the press and the public to witness judicial proceedings and the necessity for the court to take steps to ensure that the defendant receives a fair trial. The context in which the issue has here arisen is the imminent individual *voir dire* of the members of the venire. The defendant has asked that this questioning occur outside the presence of the public and the press. Counsel for the defendant relies on affidavits submitted in this case which indicate that there has been widespread publicity concerning the events surrounding this matter and that there is some suggestion that, because of the highly personal nature of some of the information to be elicited, potential jurors may be inhibited by the presence of the public and the press from answering some of the questions candidly.

The court held a hearing on this matter on July 22, 1981, at which representatives

of the media and the public were invited to appear. Counsel for four media organizations—*The San Francisco Chronicle, The San Francisco Examiner,* the National Broadcasting Company, and the American Broadcasting Company and counsel for both the United States and the defendant made appearances at this hearing. After a full argument on the matter, and after considering the relevant case law and the material in the record of this case, the court concludes that the defendant has failed to demonstrate that such closure is necessary to the selection of a fair and impartial jury. Therefore, the court will conduct the *voir dire* with the representatives of the media present. The conditions set out below are sufficient, in this court's view, to ensure that the selection process will be fair. These conditions are as follows:

(1) *Voir dire* will be conducted in the Judge's Conference Room. The relative informality of that setting will help put the potential juror at his ease and make him more willing to respond to these questions in a relaxed and honest manner. As a result of the space restrictions, the members of the media will have to select three of their number to represent them and report on these proceedings. For the reasons articulated below, the court will not allow any sketch artists with their paraphernalia into these sessions.

(2) The potential jurors will be assigned numbers by the clerk of the court. During the *voir dire* examination, and at all other proceedings in this case, they will be referred to by the court and by counsel for each side only by those numbers. Their names will not be released publicly. Sketch artists will not be allowed in these *voir dire* sessions with their paraphernalia in order to ensure that the potential juror will not be identifiable in any media accounts of the questioning.

(3) In order to facilitate the *voir dire* process, counsel for each side will have the name of the potential juror who is being questioned. However, all court personnel, counsel for the parties, their agents, assistants, and any other person who is given the names of the potential jurors in the course of these proceedings, are hereby ordered not to reveal those names to any unauthorized person. Violation of this order will be subject to contempt proceedings.

(4) All potential jurors who are to be questioned in individual *voir dire* have already been warned not to read or listen to any media accounts concerning this case. Notwithstanding, at the beginning of each *voir dire,* the court will inquire of the potential juror whether he or she has read or heard any such accounts. If he indicates he has, the court will question the person further to determine whether that information will make it impossible for the court to get the type of answers to its questions necessary to a proper determination for excusals. If the court determines that the potential juror cannot answer the questions candidly, fully, and spontaneously because of what he or she has read or heard, the person will be excused.

(5) The court will remain sensitive to the possible inhibition of a potential juror because of the presence of the press, and if the court feels that the person will not or cannot answer the questions put to him honestly, fully, and fairly because of the presence of the press, the court will determine, on an individual basis, whether there are no alternatives other than to proceed with the questioning outside the presence of the press. If that becomes necessary, the court will make appropriate findings under the law.

This procedure has been chosen by this court after careful evaluation of the law governing the closing of court proceedings to members of the public and the media. A recent decision by the United States Supreme Court provides the court with the analytic structure within which it must consider this issue. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ("*Richmond Newspapers* ") concerned the summary closure of a

trial by the judge with the consent of counsel for both the prosecution and the defense. The Court held that the trial judge acted improperly in summarily closing the proceedings.[1] While there was no opinion written for a majority of the Court, the decision in the case, when read along with *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), establishes the following propositions: (1) that there is a strong presumption in favor of conducting trial proceedings in public; (2) that, in order to close any trial proceedings, the court must be convinced that there exists a serious threat to the rights of fair trial or some other recognized right of substantial proportions; and (3) that there are no less restrictive alternatives available which would relieve the threat without having to exclude the public from the proceeding.

The exact standard to be applied by the court in evaluating these factors is not perfectly clear, *see Richmond Newspapers, supra*, 100 S.Ct. at 2842 (Blackmun, J., concurring), but we need not here determine what standard is appropriate. The court agrees that the *voir dire* process must be completely effective in order to ensure the defendant a fair trial. But the defendant has not demonstrated to the court's satisfaction that the alternative restrictions that are being ordered will not provide sufficient guarantees that the process will produce a fair and impartial jury.

The concerns expressed by counsel for the defendant fall into three categories: (1) that press reports on the questioning will be read by members of the venire who are to be interrogated at a later date and thereby the spontaneity of their responses will be threatened; (2) that the presence of the public and, more particularly, members of the press, will inhibit the potential jury members from answering some of the more probing questions fully and honestly; and (3) that the publicity which might attend the *voir dire* process might unfairly invade the rights to privacy of the members of the venire. These concerns are particularly telling in this case because there will be of necessity a large number of questions asked of a highly personal nature, ranging over a variety of subjects which may be very sensitive to many or all persons who are questioned. In addition, this wide-ranging and highly personal *voir dire* is occurring in a highly publicized case, therefore making it more likely that the media will show interest in responses of the potential jury members. Moreover, because many, if not most, of the potential jurors will be aware of the high degree of publicity surrounding the matter, they may be particularly aware that these details of their personal lives and attitudes might show up in the next day's newspaper.

The court is sensitive to these problems. It is also, however, very aware of the Supreme Court's direction to explore alternative methods of dealing with these types of problems short of excluding the public entirely from a trial. In this case, the court has devised just such procedures.

It is the determination of the court that these alternatives will resolve the difficulties in the *voir dire* process without requiring the complete exclusion of the public and the press. The restriction on the number of press present during the proceeding is entirely proper under the law. *Richmond Newspapers, supra*, 100 S.Ct. at 2830 n.18 (plurality opinion); 100 S.Ct. at 2839 n.23 (Brennan, J. and Marshall, J., concurring); 100 S.Ct. at 2840 (Stewart, J., concurring). The restrictions on the dissemination of the names of potential jurors will allow the

---

1. In a similar decision recently by the Eighth Circuit Court of Appeals, *In re United States ex rel. The Pulitzer Publishing Company*, 635 F.2d 676 (1980), the court granted a writ of mandamus to prevent the district court from conducting the individual *voir dire* outside the presence of the public and the media. The court rested its decision solely on the failure of the district court to make any findings concerning the need to close the proceedings, and the failure of the record to reflect any attempt by the district court to balance the right of the defendant to a fair trial and the right of the public to attend a criminal trial. *Id.* at 678, 679.

press to report fully on the proceedings, the nature of the questions and responses, and the results of the questioning, while protecting the privacy interests of the persons being questioned. This anonymity should also prevent the possibility of press accounts of the proceedings inhibiting the responses of the potential jurors. The court's admonition and its inquiry into any contamination should prevent any press accounts from influencing the responses given. And, as indicated, the court is prepared to reconsider conducting the *voir dire* without the media present for a particular individual, if the evidence so warrants.

The defendant has not produced any evidence that suggests that these types of procedures will not resolve the suggested difficulties. Nothing in the affidavits presented by the defendant convince this court that the process, as modified by this order, will not result in honest and full answers from the potential jurors and allow for the selection of a fair jury. At the same time, the right of the public to be kept aware of the proceedings in this criminal trial is preserved, with only minimal restrictions. This balance of the rights of the defendant, the rights of the public, and the rights of the members of the venire is required, in the court's opinion, by the Supreme Court cases in this area. Certainly, they do not suggest that greater restrictions on the rights of the media to cover this trial would be appropriate on the present record.

SO ORDERED.