**IOWA FREEDOM OF INFORMATION COUNCIL and the Des Moines Register and Tribune Company, Plaintiffs,**

v.

**Honorable Van WIFVAT, Judge of the Fifth Judicial District of Iowa, Defendant.**

No. 67221.

Supreme Court of Iowa.

Jan. 19, 1983.

Barbara M. Mack and Michael A. Giudicessi, Des Moines, for plaintiffs.

Raymond Rosenberg of Rosenberg & Margulies, Des Moines, for defendant.

UHLENHOPP, Justice.

In this certiorari proceeding we consider a district court order closing a pretrial suppression hearing and sealing the transcript until completion of trial.

Bradley J. Mather was charged with two counts of first-degree murder following the deaths of two youths in a West Des Moines motel fire allegedly set by Mather. Robert E. Davis, media coordinator for the Fifth Judicial District of Iowa, applied for expanded media coverage of Mather's trial. Mather resisted the application. At a pretrial suppression hearing, Mather moved to close the hearing to the public and press, and to seal the transcript until completion of trial. Mather argued that closure was necessary to insure him his constitutional right to a fair trial. He reasoned that if certain subjects to be considered at the hearing were made known to the public, but were determined at the hearing to be inadmissible at trial, he could not receive a fair trial by an impartial jury. He pointed to the pretrial publicity his arrest had already generated. The prosecutor agreed that considerable pretrial publicity had occurred and stated he did not resist the closure motion.

Attorney Michael A. Giudicessi then asked to speak on behalf of the Iowa Freedom of Information Council (council) and The Des Moines Register and Tribune Company (Register). The council consists of a group of publishers and broadcasters throughout the state. Giudicessi asserted constitutional grounds in resisting Mather's motion to close the hearing. He claimed that all court proceedings should be open to public scrutiny to preserve the integrity of the judicial system and to avoid the suppression of evidence of police misconduct and any other impingement on a defendant's rights. While Giudicessi agreed that considerable pretrial publicity had occurred, he argued that publicity in and of itself would not result in a denial of Mather's right to a fair trial. He suggested alternatives to closure—change of venue, delay of trial date, and effective voir dire—that could protect Mather's rights.

The district court granted Mather's motion to close the hearing and did so on the authority of *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). After hearing, the court also denied the council's application for expanded media coverage. Plaintiffs council and Register then petitioned this court for a writ of certiorari. We granted a writ in order to provide guidelines for closure motions, but we did not stay the criminal prosecution in district court, which went

forward. After briefs had been submitted in this court, plaintiffs dismissed the part of this proceeding pertaining to expanded media coverage. We are left, therefore, with the sole issue of whether a criminal defendant, unopposed by the prosecution, can have a pretrial suppression hearing closed to the public and press.

I. Initially we consider two preliminary questions. One of them relates to the nature of a writ of certiorari. Rule 306 of the Iowa rules of civil procedure states:

A writ of certiorari shall only be granted ... where an inferior tribunal ... is alleged to have exceeded its ... proper jurisdiction or otherwise acted illegally.

See *State v. West,* 320 N.W.2d 570, 573 (Iowa 1982); *In re Marriage of Welsher,* 274 N.W.2d 369, 371 (Iowa 1979). Illegality exists within the meaning of this rule when the findings on which the tribunal based its conclusions of law do not have substantial evidentiary support. *Fetters v. Degnan,* 250 N.W.2d 25, 27 (Iowa 1977); *Cedar Rapids Human Rights Comm'n v. Cedar Rapids Community School District,* 222 N.W.2d 391, 401 (Iowa 1974). Illegality also exists when the tribunal did not apply the proper rule of law. *Hightower v. Peterson,* 235 N.W.2d 313, 317 (Iowa 1975). Our review by certiorari is not de novo, but where violations of basic constitutional safeguards are involved we make our own evaluation of the facts from the totality of the circumstances. *Hightower* at 317.

The other preliminary issue relates to mootness. Because we denied a stay, the pretrial suppression hearing was held without the public and press present, the case was tried, and Mather was acquitted.

Generally we will not consider an action if it no longer presents a justiciable controversy. *Hamilton v. City of Urbandale,* 291 N.W.2d 15, 17 (Iowa 1980). But claims should not be dismissed on mootness grounds where matters of public importance are presented and the problem is likely to recur. *City of Des Moines v. Public*

*Employment Relations Board,* 275 N.W.2d 753, 758 (1979). The United States Supreme Court has found cases of this type not moot where (1) the challenged action was in its duration too short to be fully appealed prior to its cessation or expiration and (2) a reasonable expectation existed that the same complaining party would be subjected to a similar action. *Gannett Co., Inc. v. DePasquele,* 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608, 620 (1979) (challenge to lower court order closing a pretrial hearing when trial itself was over); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911) ("capable of repetition, yet evading review"). *See also Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 563, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973, 981 (1980) ("[I]t is reasonably foreseeable that other trials may be closed by other judges. . . ."). We proceed therefore to the merits, even though our decision will have no practical effect on the criminal case.

II. Involved is the tension between a criminal defendant's sixth amendment right to fair trial and the first amendment right of access to judicial proceedings of the public and press. *Gannett* found the public and press had no *sixth amendment* right which prevented a criminal defendant from obtaining closure of a *pretrial hearing.* 443 U.S. at 391, 99 S.Ct. at 2911, 61 L.Ed.2d at 628. But in *Richmond,* the Court found the public and press possess a *first amendment* right to attend criminal *trials.* 448 U.S. at 581, 100 S.Ct. at 2829, 65 L.Ed.2d at 992. *Gannett* involved five opinions by members of the Court, and *Richmond* involved seven opinions. At this time we do not find clear-cut guidance on the question of *first amendment* rights of access of the public and press to *pretrial hearings.*

Our common law has long favored open judicial proceedings:

The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the

excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the *lettre de cachet. . . .* Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution.

*In Re Oliver,* 333 U.S. 257, 268–70, 68 S.Ct. 499, 505–06, 92 L.Ed. 682, 691–92 (1948). The Court stated in *Richmond:*

The historical evidence demonstrates conclusively that at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open. This is no quirk of history; rather, it has long been recognized as an indispensable attribute of an Anglo-American trial. Both Hale in the 17th Century and Blackstone in the 18th saw the importance of openness to the proper functioning of a trial; it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants and decisions based on secret bias or partiality.

448 U.S. at 569, 100 S.Ct. at 2823, 65 L.Ed.2d 984. Our society has less difficulty accepting that which it observes than that which it is not permitted to observe. "When a criminal trial is conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case. . . ." *Id.* at 572, 100 S.Ct. at 2825, 65 L.Ed.2d 986.

Although the *Gannett* Court permitted a closed hearing, it stated:

There can be no blinking the fact that there is a strong societal interest in public trials. Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system.

443 U.S. at 383, 99 S.Ct. at 2907, 61 L.Ed.2d at 623. Our own court has recognized the same advantages in public trials. *State v. Lawrence,* 167 N.W.2d 912, 914 (Iowa 1969). *See also State v. Rasmus,* 249 Iowa 1084, 1087, 90 N.W.2d 429, 430 (1958) ("We deem it proper to suggest that the practice of disposing of an indictment, . . . upon which a trial was then in progress, in the seclusion of the judge's chambers is not to be commended."); Iowa Code § 605.16 (1981) ("All judicial proceedings must be public, unless otherwise specifically provided by statute or agreed upon by the parties.").

III. Under English common law, the public did not have a right to attend pretrial proceedings. *Gannett,* 443 U.S. at 389, 99 S.Ct. at 2910, 61 L.Ed.2d at 627. Our modern suppression hearings, however, are creatures unknown to traditional common law; they resemble trials in many respects. Evidence is presented by live testimony; witnesses are sworn and subject to cross-examination; and the ultimate issue of trial admissibility may depend on the fact finder's evaluation of the credibility of the witnesses and weight of the evidence. This adversary setting can benefit from the same safeguards that public access provides to full trials.

Moreover, the modern pretrial suppression hearing is a critical and often decisive stage in the prosecution of a criminal case. "The suppression hearing often is the only judicial proceeding of substantial importance that takes place during a criminal prosecution." *Gannett* at 434, 99 S.Ct. at 2933, 61 L.Ed.2d at 656 (Blackmun, J., dissenting).

■ In view of the state of the decisions of the United States Supreme Court on this subject, we turn to the Iowa Constitution. Article I, Section 7, of that constitution states in part:

No law shall be passed to restrain or abridge the liberty of speech, or of the press.

Article I, section 10, states:

In all criminal prosecutions, and in cases involving the life, or liberty of an

individual the accused shall have a right to a speedy and public trial by an impartial jury....

We have said that "the federal and state constitutional provisions which contain almost identical language, impose the same limitation on abridgement of freedom of the press." *Des Moines Register and Tribune Co. v. Osmundson,* 248 N.W.2d 493, 498 (1976). On consideration of interpretations by the United States Supreme Court of federal constitutional provisions identical to our own, and based on our interpretation of our own state constitution, we hold as a matter of state constitutional law that a right of public access applies to pretrial suppression hearings. *See United States v. Brooklier,* 685 F.2d 1162, 1167 (9th Cir. 1982); *United States v. Criden,* 675 F.2d 550, 551, 557 (3d Cir.1982); *United States ex rel. Pulitzer Publishing Co.,* 635 F.2d 676, 679 (8th Cir.1980).

This right of access, however, is not absolute. We have recognized that the right to public trial

> has never existed as a rigid, inflexible straight jacket upon the courts. It has generally been viewed as a right subject to the inherent power of the court to limit attendance as the conditions and circumstances reasonably require for the preservation of of order and decorum in the courtroom, *and to reasonably protect the rights of parties and witnesses.*

*State v. Lawrence,* 167 N.W.2d 912, 914 (Iowa 1969) (emphasis added). We agree with the New York Court of Appeals that

> the right of the public and the press to attend court proceedings is not absolute. All court proceedings are presumptively open to the public, but when this would jeopardize the right of the accused to a fair trial, the competing interests must be balanced and reconciled as far as possible.

*Westchester Rockland Newspapers, Inc. v. Leggett,* 48 N.Y.2d 430, 438, 423 N.Y.S.2d 630, 634, 399 N.E.2d 518, 522 (1979).

Justice Powell's concurrence in *Gannett,* while recognizing a reporter's first amend-

ment right of access to court proceedings, acknowledged that the right was not absolute:

> The right of access to courtroom proceedings, of course, is not absolute. ˙ It is limited both by the constitutional rights of defendants to a fair trial ... and by the needs of government to obtain just convictions....

*Gannett,* 443 U.S. at 398, 99 S.Ct. at 2915, 61 L.Ed.2d at 633 (Powell, J., concurring).

IV. Public access to pretrial suppression hearings frequently leads to pretrial publicity. While publicity in and of itself does not preclude a fair trial, *see United States v. Haldeman,* 559 F.2d 31 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *Calley v. Callaway,* 519 F.2d 184 (5th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976), publicity concerning pretrial suppression hearings

> poses special risks of unfairness. The whole purpose of such hearings is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury.... Publicity concerning the proceedings at a pretrial hearing, however, could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial.
>
> The danger of publicity concerning pretrial suppression hearings is particularly acute because it may be difficult to measure with any degree of certainty the effects of such publicity on the fairness of the trial. After the commencement of the trial itself inadmissible prejudicial information about a defendant can be kept from a jury by a variety of means. When such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors.

*Gannett* at 378, 99 S.Ct. at 2905, 61 L.Ed.2d at 621.

■ Commentators state that neither *Gannett* nor *Richmond* gives clear guide-

lines with which to balance the competing interests of open judicial proceedings and fair trials. *See* Note, *Evaluating Court Closures After Richmond Newspapers: Using Sixth Amendment Standards To Enforce A First Amendment Right,* 50 Geo. Wash.L.Rev. 304, 304 (1982); Comment, *Protecting Access to the Criminal Court,* 1981 Ariz.St.L.J. 1049, 1066. Justice Blackmun's dissent in *Gannett,* however, proposed a three-prong test that a criminal defendant must meet in order to overcome the presumption of open pretrial suppression hearings. That test requires a showing of substantial probability that (1) irreparable damage to the defendant's fair-trial right will result from an open hearing; (2) alternatives to closure will not adequately protect the right to a fair trial, and (3) closure will be effective in preventing prejudicial publicity that could deny the defendant's right to a fair trial. *Gannett* at 441–42, 99 S.Ct. at 2937, 61 L.Ed.2d at 660–61 (Blackmun, J., dissenting).

This test has been adopted either wholly or with variations by several courts. *United States v. Brooklier,* 685 F.2d 1162, 1168–69 (9th Cir.1982) (three-prong test); *United States v. Powers,* 622 F.2d 317, 321 (8th Cir.), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980) (test for trial closure when prosecutor opposes closure; three-prong test but with "clear and convincing" language); *In re United States ex rel. Pulitzer Publishing,* 635 F.2d 676, 680 (8th Cir.1980) (Gibson, J., concurring, three-prong test); *United States v. Pageau,* 526 F.Supp. 1221, 1223 (N.D.N.Y.1981) (first two prongs); *United States v. Layton,* 519 F.Supp. 959, 961 (N.D.Cal.1981) (voir dire closure, first two prongs); *United States v. Civella,* 493 F.Supp. 786, 789 (W.D.Mo.1980), *aff'd on other grounds,* 648 F.2d 1167 (8th Cir.1981) (three-prong test); *P.R. v. District Court,* Colo., 637 P.2d 346, 352 (1981) (pretrial contempt hearing, first two prongs with "clear and present danger" language); *Star Journal Publishing Corp. v. County Court of Pueblo County,* 197 Colo. 234, 237,

591 P.2d 1028, 1030 (1979) (preliminary hearing, same test as *P.R.* ); *United States v. Edwards,* 430 A.2d 1321, 1346 (D.C.Ct. of App.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982) (pretrial detention hearing; first two prongs with "likelihood" of fair trial denial language); *Miami Herald v. Lewis,* 426 So.2d 1 (Fla. 1982); *Ashland Publishing Co. v. Asbury,* 612 S.W.2d 749, 751 (Ky.App.1980) (three-prong test); *Detroit Free Press, Inc. v. Recorder's Court Judge,* 409 Mich. 364, 390, 294 N.W.2d 827, 837 (1980) (trial closure, three-prong test); *State v. Hannah,* 171 N.J.Super. 325, 331–32, 408 A.2d 1349, 1352 (1979) (three-prong test); *Pennsylvania v. Hayes,* 489 Pa. 419, 428, 414 A.2d 318, 322 (1980), *cert. denied,* 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed. 2d 289 (1981) (three-prong test); *Tennessee v. Dorrough* (Tenn.Crim.Ct.1980), 6 Media L.Rptr. 1444 (BNA) (pretrial proceeding and voir dire, first two prongs); *Richmond Newspaper, Inc. v. Commonwealth,* 222 Va. 574, 582, 281 S.E.2d 915, 923 (1981) (three-prong test with "likelihood" of fair trial denial language); *Herald Ass'n v. Ellison,* 138 Vt. 529, 534, 419 A.2d 323, 326 (1980) (first two prongs); *Federated Publications v. Kurtz,* 94 Wash.2d 51, 62–63, 615 P.2d 440, 446 (1980) (first two prongs with "likelihood" of fair trial denial language). *See also* ABA Standards for Criminal Justice (2d ed. 1982 Supp.), Standard 8–3.2 (all pretrial proceedings, first two prongs); Revised Free Press-Fair Trial Guidelines of the Judicial Conference of the United States—1980, 87 F.R.D. 525, 534 (same as ABA Standards but with "likelihood" of fair trial denial language). *Layton* adopted the first two prongs of the test by reading *Gannett* and *Richmond* together, and one commentator has stated that, after *Richmond,* the three-prong test should be applied. Comment, *Protecting Access to the Criminal Court,* 1981 Ariz.St. L.J. 1049, 1056 (citing Goodale, *The Three-Part Open Door Test in Richmond Newspapers Case,* Nat'l L.J. 27, Col. 3 (Sept. 22, 1980)).

We think the three-prong test adequately balances the competing constitutional inter-

ests. The first prong protects a defendant's right to a fair trial; the second prong employs traditional freedom of speech and press analysis to protect the right of access of the public and press; the third prong, not adopted by some jurisdictions, employs practical considerations we deem important.

A similar three-prong test has been used in prior restraint cases where the competing interests are virtually the same (fair trial right and freedom of press). *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 562, 96 S.Ct. 2791, 2804, 49 L.Ed.2d 683, 699 (1976) (before restraining publication court should consider (1) nature and extent of pretrial news coverage, (2) whether other measures would be likely to mitigate the effect of unrestrained pretrial publicity, and (3) how effectively a restraining order would operate to prevent the threatened danger). *See Des Moines Register and Tribune Co. v. Osmundson,* 248 N.W.2d 493, 499 (Iowa 1976). We adopt Justice Blackmun's three-prong test as a guideline to be employed in determining whether criminal pretrial proceedings should be closed.

V. Other courts have suggested two additional prongs which should be used in making a closure determination. These are allowing closure objectors to state their reasons before the court reaches a decision, and articulating the reasons for a closure decision on the record. *United States v. Brooklier,* 685 F.2d 1162, 1168–69 (9th Cir.1982); *United States v. Criden,* 675 F.2d 550, 560–61 (3rd Cir.1982); *New York Times v. Corriero,* (N.Y.Sup.Ct., N.Y. County 1981), 7 Media L.Rptr. 2442, 2444 (BNA); *Seattle Times v. Ishikawa,* 97 Wash.2d 30, 37–39, 640 P.2d 716, 720–21 (1982). These are two practical prongs that district courts might well apply. The first provides the public and press an opportunity to be heard; the second preserves a record to aid an appellate court in determining whether the district court correctly applied the three-prong test. We do not, however, make these two additional procedures obligatory.

VI. The question of disposition remains. We are not limited in certiorari to sustaining or annulling the writ; we may remand for further proceedings. *See* Iowa R.Civ.P. 316; *State v. Iowa District Court,* 236 N.W.2d 54, 56 (Iowa 1975) ("we may remand for further proceedings"); *Watson v. Charlton,* 243 Iowa 80, 90–91, 50 N.W.2d 605, 611 (1951). Were this case not moot, we could remand for a decision by the district court on the closure motion in light of the three-prong test. As the suppression hearing has been held, however, remand is not in order. Nor do we find any necessity to determine de novo whether the suppression hearing should have been open or closed. With the closed suppression hearing an accomplished fact, such a de novo determination by us would be an academic exercise. This certiorari proceeding has accomplished its purpose in our adoption of the three-prong test. We hold that the district court erred in deciding the closure motion without applying the three-prong test, but we do not return the case to district court.

WRIT SUSTAINED.

All Justices concur except HARRIS, J., joined by REYNOLDSON, C.J., and McGIVERIN and SCHULTZ, JJ., who dissent.

HARRIS, Justice (dissenting).

A motion to suppress is a tool provided for a special purpose. Some categories of relevant evidence are obviously both informatory and inflammatory. One primary goal of the rules of evidence is to sort through the tensions and conflicts that arise between the resulting enlightment or prejudice.

Some evidence of doubtful admissibility falls into a special category because even the offer of it would be prejudicial. Even though not admitted an accused would be harmed by its disclosure. In times past an accused had only the limited advantage afforded by a timely trial objection, and an occasional admonition by the trial court obligating the jury to "disregard" the excluded subject.

Because the trial protection accorded was only partial a motion to suppress is now provided. Iowa R.Crim.P. 11. Such a motion existed in our practice prior to the advent of rule 11. *State v. Holland,* 258 Iowa 206, 214–15, 138 N.W.2d 86, 90 (1965). Impetus for providing such a procedural tool to criminal defendants came from *Jackson v. Denno,* 378 U.S. 386, 387–88, 84 S.Ct. 1774, 1786, 12 L.Ed.2d 908, 921–22 (1963), which recognized the difficulties faced by a jury when required to consider inflammatory evidence only as directed.

The procedure prescribed by the majority in this case is at odds with the practicalities which impelled the *Jackson v. Denno* decision. The very definition of a motion to suppress assumes a claim will be made by an accused that publicity would be unfair. While I would not argue that all, or even most, suppression hearings must be private I do believe that the importance of the right in a proper case is co-extensive with a right to a fair trial.

The harm from prejudicial publicity can, and often will, arise under the majority holding by the mere processing of the motion to suppress. What sort of hearing will be held? Will the media participate? If so will there be pretrial publicity on the subject of the motion?

Despite the majority's recognition that the federal constitution "... impose[s] the same limitation or abridgment of freedom of the press" as our state constitution, it proceeds to adopt the three prong test espoused by the dissenters in *Gannett v. De-Pasquale,* 443 U.S. 368, 441–42, 99 S.Ct. 2898, 2936–37, 61 L.Ed.2d 608, 660–61 (1979) (Blackmun, J., dissenting). If we are to consider federal constitutional decisions when construing our own constitution, we would do well to adopt the prevailing view on the United States Supreme Court rather than the dissent.

If evidence is not suppressed as a result of the hearing, the press will not be ultimately harmed by being excluded. The subject evidence will be disclosed later at a public trial. If the evidence is suppressed it will be because it is determined a jury should not learn of it. Such a determination is subject to later review and thus subsequent public disclosure. The right of the press to the information is co-extensive with the public's right to it. Because a fair trial is at issue, the public's right, and the press's right, to the challenged evidence should be delayed until trial or, if suppressed, until the order of suppression is reviewed.

This case is prototypical of those which call for us to yield to the trial court's discretion. The majority's decision will add another round to the series of proceedings in notorious criminal cases. It will be expensive for the taxpayers. It will add one more burden for our overworked trial bench. It will damage the value of motions to suppress and thereby detract from the quality of justice for the accused.

I would annul the writ.

REYNOLDSON, C.J., and McGIVERIN and SCHULTZ, JJ., join in this dissent.