[No. A030693. First Dist., Div. Five. Mar. 18, 1985.]

UKIAH DAILY JOURNAL, Petitioner, v.
THE SUPERIOR COURT OF MENDOCINO COUNTY, Respondent;
THOMAS JOHN MARSTON et al., Real Parties in Interest.

**COUNSEL**

Thomas S. Brigham and Rawles, Hinkle, Carter, Brigham, Gaustad & Behnke for Petitioner.

No appearance for Respondent.

Richard J. Petersen, Joseph D. Allen and Vivian Rackauckas, District Attorney, for Real Parties in Interest.

OPINION

**LOW, P. J.**—We hold that voir dire must be conducted in open proceedings unless there is an overriding interest supported by adequate findings that closure is necessary to preserve that interest. A court must also consider alternatives to closure which might harmonize the rights of the public and the defendant before any narrowly tailored order for closure is made.

Real party in interest Thomas John Marston is awaiting trial for a drug-related double murder in Mendocino County. Because the People are seeking the death penalty, Marston's jury may be "death-qualified" by removing all prospective jurors who indicate during voir dire that they are unequivocally opposed to capital punishment. (*Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770].) When jury selection commenced, Marston and the People jointly moved to close the *Witherspoon*-related voir dire to the press and public. Petitioner Ukiah Daily Journal (Journal) appeared and opposed the motion. Journal asserted the public's right to open judicial proceedings and the corollary First Amendment right of the press to attend and report on criminal trials. (See *Richmond Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814].) The superior court granted real parties' motion and ordered that the *Witherspoon* voir dire be closed. Journal challenges the closure order by this petition for writ of mandate. We issued the alternative writ, stayed proceedings in the superior court, and heard oral argument. On the record before us, we conclude that the closure order was error. Accordingly, we grant the peremptory writ.

This case poses the issue of whether and under what circumstances *Witherspoon* voir dire may be closed to public attendance and media coverage. Resolution of this issue requires us to assess the effect of *Press-Enterprise Co.* v. *Superior Court of Cal.* (1984) 464 U.S. 501 [78 L.Ed.2d 629, 104 S.Ct. 819] on *Hovey* v. *Superior Court* (1980) 28 Cal.3d 1 [168 Cal.Rptr. 128, 616 P.2d 1301], a question explicitly left open by our Supreme Court in *People* v. *Turner* (1984) 37 Cal.3d 302, 316, footnote 4 [208 Cal.Rptr. 196, 690 P.2d 669].

In *Hovey,* the California Supreme Court addressed the procedures for death-qualifying a jury under *Witherspoon.* The court was primarily concerned with whether existing jury selection processes in capital cases yielded juries less than neutral on the question of guilt. Because the death-qualification process requires that each juror be questioned regarding his or her attitudes and beliefs concerning the death penalty, the *Hovey* court concluded that the death-qualification questioning of juror after juror unduly emphasized the penalty phase of the trial, and created a distinct danger that

jurors exposed to such repeated questioning would presume guilt before trial commenced. (*Hovey* v. *Superior Court, supra,* 28 Cal.3d at pp. 79-80.) To solve this problem the Supreme Court held that the *Witherspoon* voir dire of each prospective juror was to be conducted "individually and in sequestration." (*Id.,* at p. 80.) The court noted that this procedure would also eliminate "the influences which the [responses] . . . of fellow venirepersons may exert." (*Ibid.,* fn. 134.) *Hovey* did not specifically state whether sequestered voir dire was to be closed to the press and public, but did state that its ruling "will not in any way affect the open nature of a trial." (*Id.,* at pp. 80-81.)

In *Press-Enterprise,* decided four years after *Hovey,* a California trial court had closed all of the voir dire of a capital trial, including the death-qualification: The United States Supreme Court first ruled that voir dire was part of the trial and therefore subject to the press' and public's right to open proceedings. After discussing the historical evolution of open criminal trials, and the tension between the rights of the defendant to a fair and impartial trial and the right of the press and public to attend open judicial proceedings, the court ruled that criminal trials are presumptively open. Closure could only be granted if this "presumption of openness" was overcome by an overriding interest, and only if the trial court made findings that closure is necessary to preserve that interest. The court also held that any closure order must be "narrowly tailored" to preserve the overriding interest with the least possible interference with the right to openness. (*Press-Enterprise Co.* v. *Superior Court of Cal., supra,* 464 U.S. 501, 510 [78 L.Ed.2d 629, 638, 104 S.Ct. 819, 824].)

Respondent superior court concluded that *Hovey* does not require closure of *Witherspoon* voir dire, but found sufficient justification for closure under *Press-Enterprise.* Journal argues that *Press-Enterprise* compels the opposite result. Marston insists that *Hovey*'s phrase "in sequestration" requires closure of *Witherspoon* voir dire, and that this requirement does not violate the rule of *Press-Enterprise* on the facts of this case.

 We disagree with Marston's interpretation of *Hovey. Hovey* does not require closure of *Witherspoon* voir dire. Our Supreme Court's concern was the influence on prospective jurors wrought by the presence of fellow venirepersons during *Witherspoon* questioning. The court emphasized the psychological evidence suggesting that when thrust into the "unfamiliar and imposing surroundings of a courtroom," and subjected to the "sometimes baffling ritual of voir dire," a prospective juror "will typically seek cues about appropriate ways of thinking, feeling, and believing." (*Hovey* v. *Superior Court, supra,* 28 Cal.3d at p. 70, and see pp. 71-80.) The focus of the opinion is the problem caused by the presence of fellow venirepersons;

nothing in *Hovey* suggests a concern over any influence caused by the presence of the press and public. The obvious basis of the *Hovey* decision, coupled with its explicit statement that its ruling would "not in any way affect the open nature of a trial," compels the conclusion that sequestered voir dire requires only that questioning of each prospective juror occur in isolation from other venirepersons.[1]

This conclusion is consistent with the *Press-Enterprise* court's reading of *Hovey*. Responding to the argument that the California court's closure order was based on that case, the Supreme Court interpreted *Hovey* as requiring only that *Witherspoon* voir dire be conducted outside the presence of other venirepersons. The court reasoned that the interest *Hovey* sought to vindicate, the elimination of the prejudicial influence of other jurors' responses on death-qualification voir dire, would not support a closure order: "[t]here was no indication [in *Hovey*] that the presence of the public or press affected jurors. The California Supreme Court in fact stated that its decision would not 'in any way affect the open nature of a trial.'" (*Press-Enterprise Co. v. Superior Court of Cal., supra,* 464 U.S. 501, 512, fn. 11 [78 L.Ed.2d 629, 639, 104 S.Ct. 819, 825].)

Even if *Hovey* could be read to require closure, the controlling test in this area is that set forth in *Press-Enterprise*. ■ The record before us reveals no "higher interest" sufficient to satisfy that test. *Press-Enterprise* explicitly declares that the interest *Hovey* seeks to protect is unrelated to closure, and cannot be used as a "higher interest" to override the presumption of openness of a criminal trial. No other interest of a higher order than openness was identified by the superior court. At best, the court made brief, general allusions to Marston's right to a fair and impartial trial and to the problem of exposure of prospective jurors to media coverage in a small community. ■ A bare assertion of a defendant's Sixth Amendment rights, however, is insufficient to justify closure absent findings that nonclosure specifically threatened that interest. (*Press-Enterprise Co. v. Superior Court of Cal., supra,* 464 U.S. 501, 510-511 [78 L.Ed.2d 629, 639, 104 S.Ct. 819, 825].) The problem of media exposure evidently assumes that prospective jurors will be influenced regarding their attitudes about the death penalty by being exposed to media coverage of the attitudes of other jurors. There are no findings in the record sufficient to support this assumption; without such findings, we cannot assume that such an influence would exist. Closure of part of a criminal trial cannot be ordered on the mere assumption that a

---

[1]Marston argues that certain language used in *People v. Turner, supra,* 37 Cal.3d 302, implies that *Hovey* requires closure. We disagree. The trial judge in *Turner* denied a request for in camera questioning; the Supreme Court only briefly mentioned this aspect of the case, as *Hovey* could not by its own terms be applied retroactively. Nothing in *Turner* can be read as an affirmative endorsement of closure of *Witherspoon* voir dire.

prospective juror, outside the unfamiliar and perhaps intimidating environment of the courtroom, will be influenced by media coverage of other venirepersons' attitudes about the death penalty.

Marston argues that prospective jurors are more likely to "hold back" or be less candid in their *Witherspoon* voir dire responses if members of the press and public are present. There are no factual findings in this record to support this contention and perhaps qualify it as an overriding interest within the meaning of *Press-Enterprise*. Moreover, a similar argument has been rejected by the Ninth Circuit: "if this general theory of potential prejudice were accepted as sufficient justification for closure . . ., all testimony could be taken in secret." (*United States* v. *Brooklier* (9th Cir. 1982) 685 F.2d 1162, 1169; see also *Gannett Co.* v. *DePasquale* (1979) 443 U.S. 368, 383 [61 L.Ed.2d 608, 623, 99 S.Ct. 2898] ["[o]penness in court proceedings may improve the quality of testimony"].)

On the record before us, we conclude that no higher interest exists to override the presumption of openness. The superior court's closure order is erroneous under the test set forth in *Press-Enterprise*. Moreover, the trial court apparently did not explore the various alternatives to closure that have been developed by federal courts to harmonize the rights of both the public, including the press, and the defendant. (See, e.g., *United States* v. *Brooklier, supra,* 685 F.2d 1162; *United States* v. *Layton* (N.D.Cal. 1981) 519 F.Supp. 959.)[2]

Let a peremptory writ of mandate issue directing the superior court either to vacate its order granting the motion to close the *Witherspoon* voir dire and to enter a new and different order denying that motion and opening the voir dire to the press and public, or to conduct further proceedings consistent with the views expressed herein. The stay heretofore issued by this court will remain in effect until the issuance of the writ.

King, J., and Haning, J., concurred.

The petition of real party in interest Marston for review by the Supreme Court was denied May 16, 1985. Mosk, J., was of the opinion that the petition should be granted.

---

[2]Marston argues that the availability of daily transcripts dilutes the effect of the closure order and makes it more compatible with the right to open proceedings. He thus implies transcripts are an acceptable alternative to closure. We disagree; the ability to review transcripts of proceedings already held is no substitute for the right to attend a criminal trial.