# State of Vermont v. Delbert Clyde Tallman (Herald Assoc., Valley Publishing Corp. & Gannett Satellite Info. Network, intervenors-appellants)

[537 A.2d 422]

Nos. 84-341 and 84-461

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,**[1] **JJ.**

Opinion Filed September 11, 1987

Motion to Reargue Denied October 2, 1987

---

[1] Justice Hayes was present at oral argument but did not participate in the decision.

*Robert B. Hemley* and *Dennis R. Pearson* of *Gravel and Shea*, Burlington, for Intervenors-Appellants.

*Walter M. Morris, Jr.*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellee.

**Hill, J.** This case presents the Court with the vexatious and escalating problem of balancing a defendant's Sixth Amendment right to trial by an impartial jury against the public's claimed First Amendment right of access to pretrial criminal proceedings. We write at length because of the importance of this issue and because we believe that the trial court failed to balance properly these competing concerns.

The defendant in this case, Delbert Tallman, was arraigned on homicide charges in May of 1984. At the arraignment, the defendant asked that the affidavit of probable cause, which accompanied the charging information filed by the State, be sealed. He also requested that all trial participants and law enforcement officers be restricted from making any public comments about the case on any matters not already of public record. The court granted these requests in order to protect the defendant's right to a fair trial.

The appellants, Herald Association, Inc., Gannett Satellite Information Network, Inc., and Valley Publishing Corporation, filed motions for intervention and for relief from the two orders. The court permitted the appellants to intervene for the limited purpose of challenging the court's prior orders. A hearing was held at which no evidence was presented and only legal arguments were made by the parties. The court then denied the appellants' request for relief and reaffirmed its earlier orders.

A motion to suppress was later filed by the defendant. The defendant moved to close parts of the suppression hearing, as matters within the sealed affidavit were the subject of the motion to suppress. Appellants objected, and the court held a nonevidentiary hearing before ruling on defendant's motion for closure. It ultimately concluded that references made at the suppression hearing to potentially suppressible statements, if made public, would prejudice potential jurors and thereby infringe upon defendant's rights to a fair trial. Accordingly, the court ordered partial closure of the suppression hearing, excluding the public from the hearing at any point "where direct reference is to be made to any statement or statements of the defendant and any opinion based on that statement or statements." The appellants filed notices of appeal in this Court, challenging each of the district court's orders, and these appeals were later consolidated.

Before passing on the free press/fair trial question at issue here, two preliminary matters must be addressed. The first question relates to the intervenors' standing in this case, and the second is whether their claim is rendered moot by defendant Tallman's acquittal.

First, this Court has not held explicitly that a nonparty intervenor has standing to raise a collateral constitutional claim in a criminal proceeding. In *Herald Association, Inc.* v. *Ellison*, 138 Vt. 529, 531, 419 A.2d 323, 324-25 (1980), we stated that a petition for extraordinary relief was "a proper legal vehicle" for raising the collateral claim, thus implying that a nonparty does not have standing to directly raise such a claim in the underlying criminal proceeding. In *In re J. S.*, 140 Vt. 458, 438 A.2d 1125 (1981), however, this Court allowed a news media intervenor to raise directly its First Amendment claim in a juvenile proceeding without commenting on the need, or lack thereof, to petition for extraordinary relief in order to be afforded standing. Appellants rely on this Court's silence in *In re J. S.* for the proposition that a media intervenor has standing to raise a First Amendment claim in a criminal proceeding.

We hold that direct intervention in a trial court proceeding is an appropriate legal vehicle for ensuring that the news media's voice is heard in a timely manner. See *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 397 (1979) (Powell, J., concurring). Upon a criminal defendant's motion to seal affidavits of probable cause or to close a pretrial suppression hearing, a contemporaneous assertion by the press of the public's First Amendment right of access will assure that the public's interest is represented at the height of public concern, before "[l]ater events . . . crowd news of yesterday's proceeding out of the public view." *Id.* at 442 n.17 (Blackmun, J., concurring in part and dissenting in part). It should be emphasized, however, that our acknowledgement of the media's right to intervene for the purpose of raising a collateral constitutional claim affords only a very limited standing. As this Court stated in *Herald Association*, 138 Vt. at 531, 419 A.2d at 325, "we do not countenance any implication that nonparties can without authority in law be allowed any legal status within a pending criminal prosecution."

It must also be noted that defendant Tallman's acquittal in the underlying criminal proceeding renders this appeal technically moot; normally, this fact would defeat our jurisdiction to re-

view appellants' claims. An exception to the mootness doctrine is recognized, however, for cases that are " 'capable of repetition, yet evading review.' " *In re S. H.*, 141 Vt. 278, 281, 448 A.2d 148, 149 (1982) (quoting *Roe* v. *Wade*, 410 U.S. 113, 125 (1973)); see also *United States* v. *Brooklier*, 685 F.2d 1162, 1165 (9th Cir. 1982). The applicability of this exception is dependent on the satisfaction of a two-part test established by the United States Supreme Court in *Weinstein* v. *Bradford*, 423 U.S. 147, 149 (1975): "(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party [will] be subjected to the same action again."

Both parts of the *Weinstein* test are met here. First, an order closing a pretrial hearing "is by its nature short-lived." *Nebraska Press Association* v. *Stuart*, 427 U.S. 539, 547 (1976). Consequently, there is little likelihood of appellate review of the challenged order before it expires. Second, it is reasonably to be expected that appellants will be subjected to similar closure orders in the future. See *Gannett*, 443 U.S. at 377-78. In fact, there are a number of cases pending in the trial courts that present similar, if not identical, fair trial/free press issues. Thus the exception to the mootness doctrine is applicable here, and we now turn to the merits of this case.

## I.

■ The United States Supreme Court recently passed on the constitutionality of a California statute governing public access to preliminary hearings.[2] In *Press-Enterprise Co.* v. *Superior Court of California*, 478 U.S. 1, 106 S. Ct. 2735 (1986) (*Press-Enterprise II*), the Court identified two complementary considerations that must be examined in cases involving a claimed First Amendment right of access to criminal proceedings: first, the Court considered whether the place and process had historically been open to the press and general public, *id.* at 8, 106 S. Ct. at 2740; second, the Court inquired whether public access played a "significant posi-

---

[2] The statute provided, in pertinent part:

> [U]pon the request of the defendant and a finding by the magistrate that exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial, the magistrate shall exclude from the examination every person except [those deemed to be necessary by the legislature].

tive role in the functioning of the particular process in question." *Id.* Thus, "[i]f the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." *Id.* at 9, 106 S. Ct. at 2741. The Court ultimately concluded that such a right applied to preliminary hearings as they are conducted in California. *Id.*

## A.

Although suppression hearings are distinguishable from the preliminary probable cause hearings conducted in California, a majority of courts addressing the issue have concluded that the public possesses a qualified right of access to such proceedings. See *Associated Press* v. *Bell*, 128 A.D.2d 59, 515 N.Y.S.2d 432 (1987); *Minneapolis Star & Tribune Co.* v. *Kammeyer*, 341 N.W.2d 550, 556 (Minn. 1983); *Richmond Newspapers, Inc.* v. *Commonwealth*, 222 Va. 574, 585-86, 281 S.E.2d 915, 922 (1981); see also *Iowa Freedom of Information Council* v. *Wifvat*, 328 N.W.2d 920, 924 (Iowa 1983) (recognizing state constitutional right of public access to pretrial proceedings). Suppression hearings, like many modern pretrial procedures, have no historical counterpart. In fact, "[w]hen the Sixth Amendment was written, and for more than a century after that, no one could have conceived that the exclusionary rule and pretrial motions to suppress evidence would be part of our criminal jurisprudence." *Gannett*, 443 U.S. at 395-96 (Burger, C.J., concurring). Since the adoption of the exclusionary rule, however, suppression hearings have become a fixture in our criminal jurisprudence. In fact, one court to have considered the issue specifically stated: "pretrial suppression hearings are as important to our criminal justice system as the trial itself, and to allow the public to view the trial without any knowledge of what has taken place previously would make the right of access . . . a hollow one." *Richmond Newspapers*, 222 Va. at 588, 281 S.E.2d at 922; see also *Wifvat*, 328 N.W.2d at 923 ("pretrial suppression hearing is a critical and often decisive stage in the prosecution of a criminal case.").

We see little value in attempting to determine whether the public would have been afforded access to pretrial suppression hearings had they always been a part of the criminal prosecution. Consequently, we turn instead to the second prong of the required analysis—namely, whether and to what extent granting

the public access to pretrial suppression hearings furthers the objectives underlying this particular government process.

The presumption of openness has long been recognized as an indispensable attribute of an Anglo-American trial. "[I]t gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980).

"[T]he public's interest in the conduct of the judicial system may be even more acute when pretrial hearings are involved," *Richmond Newspapers*, 222 Va. at 587, 281 S.E.2d at 922, as the suppression hearing is the vehicle by which defendants seek to exclude evidence by calling into question police misconduct. "The public has the right to judge for itself whether the proper balance is being struck between preventing this misconduct and the possibility that the guilty may go free [because evidence must be excluded at trial]." *Id.*

The suppression hearing is frequently "the only judicial proceeding of substantial importance that takes place during a criminal prosecution." *Gannett*, 443 U.S. at 434 (Blackmun, J., concurring in part and dissenting in part). Moreover, it resembles a trial in many respects. "Evidence is presented by live testimony; witnesses are sworn and subject to cross-examination; and the ultimate issue of trial admissibility may depend on the fact finder's evaluation of the credibility of the witnesses and weight of the evidence." *Wifvat*, 328 N.W.2d at 923. In order to subject pretrial suppression hearings to the " 'cleansing effects of exposure and public accountability,' " *Sunday v. Stratton Corp.*, 136 Vt. 293, 306, 390 A.2d 398, 405 (1978) (quoting *Nebraska Press*, 427 U.S. at 587 (Brennan, J., concurring)), such proceedings must be presumptively open to public scrutiny.

> A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. . . . The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).

■ We hold, therefore, that members of the public and representatives of the news media have a right of access to pretrial suppression hearings under the First Amendment.

## B.

Exactly when affidavits of probable cause, filed in connection with the charging information, become public documents is a slightly different question, however.

In *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), the Supreme Court stated: "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." This important right enables members of the public "to appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *Newman* v. *Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) (citing *United States* v. *Criden*, 648 F.2d 814, 824 (3d Cir. 1981)).

Prior to inspection by a court, affidavits of probable cause are agency records. They are "maintained on [an] individual or compiled in the course of a criminal . . . investigation by . . . police," and they are specifically excluded from the definition of public record. 1 V.S.A. § 317(b)(5). After an affidavit is reviewed by a court, access to the document is governed by 4 V.S.A. § 693. This section states in part that "papers relating to causes in the district court . . . , together with the records of the court, shall be subject to inspection and examination by parties interested in those causes . . . ." Here, the district court, in considering whether this section granted the appellants access to the affidavit, noted that 4 V.S.A. § 652(4) provides for access to *superior court* records by "any person," while 4 V.S.A. § 693 provides access to *district court* records only to "parties interested." It then determined that the words "parties interested" included only the parties to the lawsuit. We disagree.

■ A determination that "parties interested" includes only the parties to the lawsuit would lead to complete denial of access to all district court records to anyone except the parties. This would be contrary to generally accepted practice as well as the public's constitutional and common law right of access to court records and proceedings. In short, we believe that the only reasonable interpretation of "parties interested" is one that includes the pub-

lic. We hold that, after it has been reviewed by a court, an affidavit of probable cause becomes a public document.

■ This is not to say that a court cannot temporarily seal such affidavits upon a preliminary examination of the likelihood of adverse publicity and its potential effect on the accused's right to a fair trial. Since "the harm in delayed access is not as great as that in denied access," *In re Globe Newspaper Co.*, 729 F.2d 47, 57 (1st Cir. 1984), permitting temporary restrictions pending a hearing on the matter provides a means of balancing the countervailing interests involved. Such an order must, however, be carefully drawn to afford the maximum recognition of the rights of both the defendant and the public.

## II.

To recognize a constitutional right of access to pretrial proceedings and documents is not to create an absolute right. *Globe Newspaper Co.* v. *Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982); see also *Associated Press*, 128 A.D.2d at 61, 515 N.Y.S.2d at 433. This is especially true when the defendant's Sixth Amendment right to trial by an impartial jury might be jeopardized by public disclosures prior to trial.

■ The United States Supreme Court "has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial." *Gannett*, 443 U.S. at 378. For this reason, trial judges have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Id.* However, while the court is called upon to protect the defendant's Sixth Amendment right, it must remain sensitive to the public's First Amendment right of access. The court's task is to balance paramount constitutional values rather than to abrogate one right or the other. Although, on a case by case basis, one of the interests implied here must necessarily prevail, the court's goal is to "ensure the full enjoyment and proper accommodation of both First and Sixth Amendment rights." *Nebraska Press*, 427 U.S. at 612 (Brennan, J., concurring).

Pretrial suppression hearings bring the inevitable tension between the First Amendment rights of the public and the Sixth Amendment rights of the defendant to a fever pitch. The whole purpose of such proceedings is to keep unreliable and illegally obtained evidence from the jury. If the media is afforded free access

to such proceedings, then potential jurors may be influenced by inculpatory evidence ultimately ruled to be inadmissible. *Gannett*, 443 U.S. at 378.

Nevertheless, the risk of prejudice does not necessarily mean that the proceeding should be closed. As was pointed out by the Supreme Court, "[i]n the overwhelming majority of criminal trials, pretrial publicity presents few unmanageable threats to [the accused's] right [to a fair trial]." *Nebraska Press*, 427 U.S. at 551; see also *Herald Association*, 138 Vt. at 542, 419 A.2d at 331 (Hill, J., concurring in part and dissenting in part) (listing a variety of tools available to trial judges confronted with the problem of potentially prejudicial pretrial publicity: "continuance, severance, change of venue, change of venire, voir dire, peremptory challenges, sequestration, and admonition of the jury.").

Consequently, we start with the presumption that pretrial proceedings and documents are open to the public, closure being the exception rather than the rule. *Sunday*, 136 Vt. at 306, 390 A.2d at 405. This is because "[o]penness . . . enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 508 (1984).

To rebut the presumption of openness, the party seeking closure must demonstrate "that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510; see also *Herald Association*, 138 Vt. at 534, 419 A.2d at 326 ("any pretrial closure order imposed . . . must be based on a clear necessity for the protection of the defendant's fair trial rights . . . .").

> If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed [or document sealed] only if specific findings are made demonstrating that first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

*Press Enterprise II*, 478 U.S. at 14, 106 S. Ct. at 2743.

█ In the instant case, the decision to restrict public access to the affidavit, the comments of the trial participants, and parts of the suppression hearing was made without the presentation of

any evidence. There was no factual inquiry made into the nature and extent of the publicity that the case had already been given, nor was there a factual inquiry into the extent of future publicity. While the court issued findings of fact and explained therein why it was of the opinion that alternatives to closure would not adequately protect defendant's fair trial rights, it did so without first making a factual examination into whether there was a substantial likelihood that the publicity generated by public access would irreparably damage the defendant's right to a fair trial. The trial court was thus in error.

As defendant Tallman was acquitted of the underlying charge, granting the public access to the affidavit of probable cause cannot possibly endanger his right to a fair trial. Consequently, the closure orders currently in effect are vacated.

*Order of the Windsor District Court dated June 21, 1984 is vacated. The affidavit of probable cause is hereby declared a public record.*

**Allen, C.J.**, concurring with the result. I agree that the trial court should have conducted a factual inquiry to determine whether the defendant's right to a fair trial would likely be prejudiced by publicity generated by the suppression hearing. I do not believe that the burden imposed in the opinion authored by Justice Hill upon a defendant seeking closure of a suppression hearing adequately protects the defendant's Sixth Amendment interests nor do I believe that it comports with recent decisions of the United States Supreme Court. Under these holdings there is a qualified First Amendment right of public access to attend criminal trials, *Globe Newspaper Co.* v. *Superior Court for Norfolk County*, 457 U.S. 596, 603-04 (1982); voir dire proceedings, *Press-Enterprise Co.* v. *Superior Court of California*, 464 U.S. 501, 513 (1984) (*Press-Enterprise I*); and preliminary hearings as conducted in California which the Court concluded were sufficiently like a trial to justify the same result, *Press-Enterprise Co.* v. *Superior Court of California*, 478 U.S. 1, 10, 106 S. Ct. 2735, 2741 (1986) (*Press-Enterprise II*). In addition, a majority of the Justices concluded in *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 378 (1979), that this First Amendment right extended to a pretrial suppression hearing even though the case did not expressly reach that question. See *Waller* v. *Georgia*, 467 U.S. 39, 45 (1984).

After determining that a qualified First Amendment right of access attached to preliminary hearings in California, the United States Supreme Court in *Press-Enterprise II* held that such "proceedings cannot be closed unless specific, on-the-record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " 478 U.S. at 13-14, 106 S. Ct. at 2743 (quoting *Press-Enterprise I*, 464 U.S. at 510). Further, if the interest asserted is the right of a defendant to a fair trial, such a preliminary hearing may only be closed if specific findings are made that there is a "substantial probability" that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent, and that reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. *Id.* The Court specifically rejected the California Supreme Court's interpretation of its access statute which required closure upon finding "a reasonable likelihood of substantial prejudice." 478 U.S. at 14-15, 106 S. Ct. at 2743-44. It did not, however, overrule its unanimous decision in *Waller* v. *Georgia*, 467 U.S. at 48, holding that a party seeking to close a suppression hearing need only advance an overriding interest that is likely to be prejudiced.

 I read these decisions to require one seeking closure of a trial, a voir dire proceeding, a preliminary hearing as conducted in California or the equivalent thereof to demonstrate that a substantial probability of prejudice will otherwise occur, but that closure of a suppression hearing requires only a showing that a defendant's right to a fair trial is likely to be prejudiced.

The Court has recognized that in the context of a trial itself, as opposed to a pretrial proceeding, various alternatives to satisfy the constitutional demands of fairness may be invoked. *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 581 (1980). Publicity generated by pretrial suppression hearings, however, poses special concerns which are less susceptible of protection by alternatives available during an actual trial.

As expressed in *Gannett*, 443 U.S. at 378-79:

> The danger of publicity concerning pretrial suppression hearings is particularly acute, because it may be difficult to measure with any degree of certainty the effects of such publicity on the fairness of the trial. After the commencement of the trial itself, inadmissible prejudicial information

about a defendant can be kept from a jury by a variety of means. When such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors. Closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun.

Because of this danger there is ample reason for the imposition of a lesser burden upon a defendant for closure of a suppression hearing.*

In my view, *Waller* is controlling and a defendant seeking closure of a pretrial suppression hearing is only required to advance an overriding interest that is likely to be prejudiced. 467 U.S. at 48. Inasmuch as this Court is divided on this issue, its resolution must be left to a later case.

With respect to the question of when an affidavit of probable cause becomes a public document, I would be inclined to give greater guidance to the trial courts. The majority holds that an affidavit of probable cause is a public document after review by a court. At this initial stage, however, the defendant may well be without counsel and, in all probability even with counsel, unable to adequately prepare for and present the evidence required for closure under any standard. In my opinion the trial court should, in fulfillment of its constitutional duty to minimize the effects of prejudicial pretrial publicity, make a preliminary determination sua sponte as to whether the contents of the affidavit could reasonably impair the defendant's Sixth Amendment rights if made public. If it concludes there is a reasonable likelihood of

---

* As an example, public knowledge of a confession later determined to be inadmissible in a prosecution receiving statewide publicity could so influence public opinion that it might be impossible to impanel an impartial jury. While former Chief Justice Burger suggests in *Press-Enterprise II*, 478 U.S. at 15, 106 S. Ct. at 2744, that voir dire can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict, he was earlier highly critical of extensive and lengthy voir dire conducted for that very purpose. *Press-Enterprise I*, 464 U.S. at 510. It is highly questionable whether one's fair trial rights are adequately protected by a jury comprised of persons who have not read or heard about a criminal matter which has become a media event.

prejudice, the affidavit should be sealed for a sufficient period of time to permit the defendant to move to have some or all of it remain sealed.

If the defendant so moves, the court would hold an evidentiary hearing to determine whether the contents of the affidavit should remain sealed. The State, defendant and public must be given sufficient time to fully and adequately prepare and present their respective positions.

A defendant seeking to have an affidavit remain under seal must demonstrate that the right to a fair trial is likely to be jeopardized by disclosure of the contents of the affidavit. Those opposing the sealing would then have the burden of showing that alternative procedures are available that would eliminate the claimed dangers. *Gannett* v. *DePasquale*, 443 U.S. at 401 (Powell, J., concurring). Finally, I believe that the defendant should be required to demonstrate that the sealing would probably be effective in protecting against the perceived danger. *United States* v. *Chagra*, 701 F.2d 354, 365 (5th Cir. 1983). The burden of proof on each issue should be by a preponderance of the evidence. The trial court must then make specific findings in support of its decision, and its order must be narrowly drawn to preserve the interest being protected.

To order closure or the sealing of documents, the trial court should be convinced that such action is necessary to vindicate the defendant's interests, and that no alternatives will suffice. It must employ the least-restrictive means necessary to adequately protect the defendant's interest, and limit as much as possible the intrusion into the First Amendment value. In essence, the remedy should be tailored to the potential for prejudice initially demonstrated. Preventing damage to the defendant's Sixth Amendment interest should be the focal point, rather than seeking assurance that the damage can be minimized after it has occurred, since it is difficult to measure the damage caused by pretrial publicity. The trial judge must provide factual support for each of his findings in the hearing's different phases, which can also be temporarily sealed if necessary. Such findings will allow for appropriate appellate review. Justice Peck joins in this opinion.