NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 47

No. 2018-392

In re VSP-TK / 1-16-18 Shooting            Supreme Court
(Gray Television, Inc., Appellant)

                                            On Appeal from
                                            Superior Court, Washington Unit,
                                            Criminal Division

                                            May Term, 2019


Howard E. Van Benthuysen, J.

Robert B. Hemley and Erin M. Moore of Gravel & Shea PC, Burlington, and Chad R. Bowman
  of Ballard Spahr LLP, Washington, DC, for Appellant.

Rory T. Thibault, Washington County State's Attorney, Barre, for Appellee State.


PRESENT:  Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Dooley, J. (Ret.),
                Specially Assigned


¶ 1.  **ROBINSON, J.**   The pivotal question in this case is whether a trial-court order granting a motion to quash a subpoena issued in the context of an inquest is categorically exempt from public disclosure.  We hold that the order is a public record presumptively subject to disclosure under the Rules for Public Access to Court Records, and conclude that there is no basis for sealing the record in this case.  Accordingly, we reverse the trial court's denial of appellant Gray Television, Inc.'s motion to unseal the order.

¶ 2.  This case arose out of an inquest convened under 13 V.S.A. § 5131 to investigate an incident in which police fatally shot a suspected bank robber after a standoff near Montpelier

High School. The day after the shooting, the State applied to the Washington Superior Court, Criminal Division, to open an inquest. The same day, the State served a subpoena on WCAX-TV, a station of appellant Gray Television, Inc., requiring that the station produce all of its unedited video recordings of the incident.

¶ 3. Appellant moved to quash the subpoena, citing 12 V.S.A. § 1615, a statute enacted in 2017 that protects journalists from compelled disclosure of information. 12 V.S.A. § 1615(b)(1)-(2). At the beginning of the court's hearing on the motion, the State requested that the proceedings be closed, arguing that inquests are secret, investigatory proceedings. The trial court agreed and excluded the public from the evidentiary portion of the hearing on the State's motion. On February 16, 2018, following the hearing, the court issued a written decision granting the motion to quash. This was the first court decision interpreting § 1615 since its enactment. On its own initiative, and in light of its ruling excluding the public from the evidentiary portion of the hearing on the State's motion, the court noted, "[i]nasmuch as this is an ongoing inquest this decision shall remain under seal, as shall the entire inquest file, and shall not be available to the public unless and until the inquest has concluded with indictments or informations."

¶ 4. The State completed the investigation and in April 2018 publicly announced that it would not bring any charges. Appellant subsequently moved to unseal the court's February 16 decision. The State opposed unsealing it. The trial court denied the motion. It recognized that no statute explicitly makes all inquest proceedings confidential, but concluded that under our case law, inquests, including transcripts, evidence, and court orders, are confidential and secret. Applying Vermont's Public Records Act (PRA), the court concluded that the order was exempt from disclosure pursuant to 1 V.S.A. § 317(c)(1), which exempts from disclosure records designated by law as confidential. Accordingly, it denied appellant's motion to unseal the order.

2

¶ 5. Appellant contends that the trial court improperly relied on the PRA, 1 V.S.A. §§ 315-20, rather than the Vermont Rules for Public Access to Court Records (PACR Rules). It argues that the PACR Rules provide that "[t]he public shall have access to all case records" except for records falling within a specified list of exceptions, none of which apply here. V.R.P.A.C.R. 6(a)-(b). Accordingly, pursuant to the PACR rules, the order is presumptively subject to public disclosure. It further argues there is no basis under PACR Rule 7, which governs the sealing of otherwise public court records, to seal the opinion. Appellant alternatively argues that the public's right of access to the trial court's order on the motion to quash is constitutionally protected.

¶ 6. The State argues that the trial court correctly determined the order was not subject to disclosure under the PRA, and that while court records are presumptively open to the public under the PACR Rules, this order should remain sealed because although "[i]nquest proceedings are not expressly addressed" in the list of exceptions from disclosure under the PACR Rules, a number of the exceptions should be read to apply to it.

¶ 7. The trial court's ruling sealing its order was based on its legal determination that all records associated with inquest proceedings, including the court's order on a motion to quash a subpoena, are categorically confidential and exempt from public disclosure. We review this legal determination without deference. Estate of Lott v. O'Neill, 2017 VT 11, ¶ 5, 204 Vt. 182, 165 A.3d 1099.

¶ 8. We note at the outset that given the way this case unfolded, two related but distinct concepts—the presumptive public or nonpublic nature of certain case records on the one hand, and the court's authority to seal otherwise publicly accessible records in a particular case, on the other—became intertwined. If the applicable law categorically precludes disclosure of the court's order, then no specific sealing order would be required to effectuate this requirement. Likewise, even if the applicable law authorized disclosure of the order, the court might have had discretion

3

to seal it. See In re Sealed Documents, 172 Vt. 152, 159-63, 772 A.2d 518, 525-28 (2001) (discussing circumstances in which court records subject to public disclosure may nevertheless be sealed); see also V.R.P.A.C.R. 7(a) (describing circumstances in which court may seal records that are otherwise subject to public disclosure). The trial court's ruling sealing the order in this case flowed from its conclusion that the order is categorically shielded from public disclosure under the applicable public-access law because it was issued in the context of an inquest proceeding; the court did not purport to determine that sealing is called for due to case-specific factors.

¶ 9. With that understanding, we conclude that issues concerning public access to judicial case records should be decided pursuant to the PACR Rules, rather than the PRA, and that the court order at issue is a judicial case record. Under the PACR Rules, all case records are public records presumptively subject to public disclosure unless an exception applies, and no categorical exception from disclosure applies to the February 16 order. In addition, no basis exists in this case to seal or redact the order at issue pursuant to the court's authority to seal or redact otherwise publicly accessible records.[1]

## I. PACR versus PRA

¶ 10. As an initial matter, we hold that the proper framework for evaluating whether the court's order is categorically excluded from public disclosure is found in the Vermont Rules for Public Access to Court Records, as opposed to the Vermont Public Records Act.

¶ 11. As the U.S. Supreme Court has recognized, "[e]very court has supervisory power over its own records and files." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). In

---

[1] Because we resolve this case on statutory grounds, we need not address appellant's constitutional arguments. See Sealed Documents, 172 Vt. at 156, 772 A.2d at 523 ("Our tradition of addressing issues of constitutional significance only when the matter is squarely and necessarily presented counsels restraint . . . as to the broader questions of access on these alternative grounds.").

4

exercise of this authority, this Court adopted Rules for Public Access to Court Records in 2001.[2] The rules were written to be comprehensive, reflecting all then-existing statutory and procedural rule provisions on public access to court records, and adding additional provisions. See V.R.P.A.C.R. 1; Reporter's Notes, V.R.P.A.C.R. 1. In recognition of the fact that some access statutes may have been missed in drafting the rules, and new access statutes may be adopted in the future, the PACR Rules adopted by reference any other statutory access restrictions, at least with respect to case records. See V.R.P.A.C.R. 6(b)(35); Reporter's Notes, V.R.P.A.C.R. 1. The PACR Rules are thus distinct from the PRA enacted by the Legislature and signed by the Governor, although by design the Rules generally mimic or incorporate where relevant the statutory protections of the PRA and other statutes.

¶ 12. We have previously questioned whether the PRA applies in its own right to court case records. See, e.g., Herald Ass'n v. Judicial Conduct Bd., 149 Vt. 233, 240 n.7, 544 A.2d 596, 601 n.7 (1988) (noting that "[i]t is doubtful that the public records law applies at all to judicial records in view of the specific statutes in the trial courts and the power of the judicial branch over its records"). And in a 2012 case, we applied the PACR Rules to a request to seal search warrants and related materials. In re Essex Search Warrants, 2012 VT 92, 192 Vt. 559, 60 A.3d 707. We noted that following the Court's adoption of the PACR Rules, those rules governed public access to court records. Id. ¶ 20 n.8. In her concurrence, Justice Skoglund noted that the Court likely applied the PACR Rules "because of a general understanding that Vermont's Access to Public Records Act does not govern judicial materials." Id. ¶ 37 (Skoglund, J., concurring).

---

[2] Coincidentally, a comprehensive rewrite of the PACR Rules went into effect on July 1, 2019. See Vt. Supreme Court, Order Abrogating and Replacing the Vermont Rules for Public Access to Court Records and Abrogating the Rules Governing Dissemination of Electronic Case Records (May 1, 2019), http://www.vermontjudiciary.org/sites/default/files/documents/ PROMULGATED%20VRPACR.pdf [https://perma.cc/7G6H-QA7H]. This decision is based upon the prior rules in effect at the time of the trial court's sealing order.

¶ 13.    We now make more explicit what we have long assumed, and noted briefly in Essex Search Warrants: Requests to courts for public access to case records should be evaluated under the Vermont Rules for Public Access to Court Records.  This holding is consistent with our longstanding caselaw, and the provisions of the PRA.

¶ 14.    As far back as 1987, this Court has applied law other than the PRA in evaluating questions concerning access to court records.  Before the Judiciary adopted the PACR Rules, statutes distinct from the PRA regulated public access to judicial case records.  See 4 V.S.A. § 652, repealed by 2013, No. 67, § 15 (relating to records of superior court); 4 V.S.A. § 693, repealed by 2009, No. 154 (Adj. Sess.), § 68 (relating to records of former district court).  In 1987, in evaluating a request to the court to seal an affidavit of probable cause post-arraignment, a plurality writing for the Court distinguished between agency records subject to the PRA and court records governed by one of the more specific statutes.  State v. Tallman, 148 Vt. 465, 472, 537 A.2d 422, 426 (1987).  We explained that before the affidavit of probable cause is filed with the court, it is an agency record subject to the PRA.  Id.  Once it is reviewed by a court, public access to the record is governed by the applicable statute—in that case, 4 V.S.A. § 693.  Id.  We held that § 693 provided an affirmative right of public access to court records and applied that statute, rather than the PRA, to the post-arraignment request to seal the affidavit of probable cause.  Id. at 472-73, 537 A.2d at 426-27.

¶ 15.    In 2001, the Court adopted the PACR Rules for judiciary records generally, including case records in particular.  We noted in Essex Search Warrants that since that time, the PACR Rules have governed public accessibility of court records.  2012 VT 92, ¶ 20 n.8.  In the meantime, in the context of a broader restructuring of the Judiciary, the Legislature repealed the two statutes governing public access to superior court and district court records, in 2013 and 2010, respectively.  2013, No. 67, § 15; 2009, No. 154 (Adj. Sess.), § 68.

6

¶ 16. Since <u>Tallman</u>, with one exception that has no precedential impact on the question, we have consistently applied either one of the more specific, now-repealed statutes governing court records, the PACR Rules, or the U.S. or Vermont Constitutions, and <u>not</u> the PRA to questions concerning access to court records. See, e.g., <u>Essex Search Warrants</u>, 2012 VT 92; <u>Shahi v. Ascend Fin. Servs., Inc.</u>, 2006 VT 29, ¶ 17, 179 Vt. 434, 898 A.2d 116 (applying § 693 and PACR to issue concerning confidential financial information in court records); <u>State v. Favreau</u>, 173 Vt. 636, 638-40, 800 A.2d 472, 474-76 (2002) (referencing § 693 and applying constitutional principles in analyzing issues concerning redaction and sealing of court records); <u>Sealed Documents</u>, 172 Vt. at 157 n.3, 772 A.2d at 523 n.3 (applying § 693 concerning court records in assessing public accessibility of court records rather than PRA); <u>Greenwood v. Wolchik</u>, 149 Vt. 441, 544 A.2d 1156 (1988) (invoking common law and constitutional considerations in declining to seal affidavits of probable cause). But see <u>Rutland Herald v. Vt. State Police</u>, 2012 VT 24, ¶¶ 30-32, 191 Vt. 357, 49 A.3d 91 (applying PRA rather than PACR to request for inquest records because all parties litigated case as if PRA applied and no party argued below or on appeal that records were judicial-branch records subject to disclosure under PACR). Accordingly, our understanding that the PACR Rules, and not the PRA, govern the question before us is consistent with our longstanding approach to questions concerning public access to court records.

¶ 17. In addition, our reading is consistent with the stated purpose of the PRA. Although we acknowledge that the definition of "public agency" in the PRA includes any "branch" of the State, 1 V.S.A. § 317(a)(2), we note that the constitutional predicate the Legislature invoked in enacting the PRA is directed solely at the Legislative and Executive branches. Vt. Const. ch. I, art. 6 ("That all power being originally inherent in and co[n]sequently derived from the people, therefore, all officers of government, <u>whether legislative or executive</u>, are their trustees and servants; and at all times, in a legal way, accountable to them." (alteration in original; emphasis

7

added)); 1 V.S.A. § 315(a) ("[T]he policy of" the PRA is "to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution.").[3]

¶ 18.     As a practical matter, because the PACR Rules sought to incorporate existing statutory provisions relating to the confidentiality of records, and then incorporated by reference any additional statutes, in most cases, an analysis under the PRA and one under the PACR Rules will likely lead to the same outcome.[4]  Moreover, we note that in exercising discretion where authorized under the PACR Rules, in particular pursuant to Rule 7(a), courts should be mindful of the Legislature's policy judgments concerning confidentiality of public records, as reflected in the express provisions of the PRA.  As Justice Skoglund recognized in her concurrence in Essex Search Warrants, a court's consideration of a question concerning public access to court records should be mindful of clear legislative expressions of public interest in the PRA.  2012 VT 92, ¶¶ 38-40 (Skoglund, J., concurring).  Finally, we note that, like all court rules, the PACR Rules are subject to legislative review through the Legislative Committee on Judicial Rules, 12 V.S.A. § 3 (establishing Legislative Committee on Judicial Rules), and to revision by the Legislature, Vt. Const. ch. II, § 37 (providing that "[a]ny rule adopted by the Supreme Court may be revised by the General Assembly").

## II.  Records and Inquests

¶ 19.     We conclude that the record at issue here—a decision by the trial court on a motion to quash a subpoena in the context of an inquest—is a court case record.  We reject the notion that

---

[3]  This is not to suggest that no constitutional provision requires transparency from the courts.  We have recognized that the First Amendment provides a qualified right of access to court proceedings and records, and have applied the standards of Press-Enterprise Co. v. Superior Court of California, 478 U.S. 1 (1986), in evaluating constitutional claims to access to court records. See, e.g., Tallman, 148 Vt. at 469, 537 A.2d at 425.  Because we resolve this case on statutory grounds, we need not address appellant's constitutional arguments.

[4]  Because we conclude that the PACR Rules apply here, we do not address the trial court's conclusion that the order is not subject to public disclosure under the PRA.

the ruling is not a court case record because the inquest proceeding is executive rather than judicial in nature. We have previously described the inquest proceeding generally as follows:

> [An inquest] is essentially a criminal proceeding, designed to determine whether sufficient evidence exists to prosecute a criminal matter. The state's attorney or attorney general initiates an inquest by applying in writing to a judge of the district or superior court. If the judge decides to conduct an inquest, the judge may issue "necessary process" to require witnesses to give evidence related to the investigation. This process includes issuing subpoenas and exercising the court's contempt power to force recalcitrant witnesses to testify.

In re D.L., 164 Vt. 223, 225, 669 A.2d 1172, 1174 (1995) (citations omitted). In D.L., we considered a constitutional challenge to Vermont's inquest procedure on separation-of-powers grounds. In upholding the practice, we acknowledged that the inquest proceeding was investigatory, but concluded that the court's role in the proceeding is judicial. The prosecutor initiates the process by making a written application to the court. The decision whether to hold one lies with the judge. The court does not question witnesses; instead, its role is limited to exercising its subpoena power, administering oaths, protecting the rights of witnesses, and using contempt powers—all responsibilities that "directly relate[] back to [the court's] ultimate function of neutral arbiter." Id. at 232, 669 A.2d at 1178.

¶ 20. Given this understanding of the inquest proceeding, we reject the suggestions that the proceeding is not a judicial proceeding, and that court records associated with inquests are not, in fact, court records at all for the purpose of a request to the courts for public access to those records. Even though the goal of an inquest is investigatory, it is still a court proceeding, and records filed with the court or issued by the court in connection with the inquest are still court records. Every judicial branch record "pertaining to a particular case or controversy" is a "case record" under the PACR Rules. V.R.P.A.C.R. 3(b). This clearly includes a written decision on a contested issue concerning a motion to quash in an inquest.

9

¶ 21.   Because we conclude that the trial court's written decision on the motion to quash is a court case record, and because access to court case records is governed by the PACR Rules, we consider whether the court's February 16 order is subject to disclosure under those Rules.

### III.   Application of the PACR Rules

¶ 22.   None of the categorical exceptions to the general rule of public disclosure under the PACR Rules applies to the case record at issue.  The PACR Rules provide that "[t]he public shall have access to all case records" unless the records fall within a list of enumerated exceptions. V.R.P.A.C.R. 6(a); see also V.R.P.A.C.R. 4 (enunciating general policy that "[e]xcept as provided in these rules, all case and administrative records of the Judicial Branch shall be open to any member of the public for inspection or to obtain copies").  Accordingly, the public presumptively has access to the opinion unless any of the exceptions in Rule 6(b) apply.

¶ 23.   The State concedes that none of the exceptions expressly apply, but points to the confidentiality of inquest proceedings and argues that because the order relates to an inquest, and the "reasoning and policy considerations underlying a number of" the exceptions apply with equal force to records related to inquests, the record should not be accessible to the public.  It also argues that the order falls within the scope of several exceptions intended to prevent disclosure of recordings of or evidence from proceedings to which the public does not have access, or other records to which public access is statutorily prohibited.  We conclude that none of these exceptions to disclosure applies.

¶ 24.   We reject the State's argument that we should infer a categorical prohibition against disclosure of records relating to inquest proceedings because inquests are similar to procedures to which Rule 6(b) exceptions relate, such as the issuance or denial of a search warrant or the initiation of a criminal proceeding.  See V.R.P.A.C.R. 6(b)(15), (16), (24) (exempting from

disclosure records of issuance or denial of search warrant, and records filed in connection with initiation of criminal proceeding if judicial officer does not find probable cause).

¶ 25. In interpreting a court rule, "we employ tools similar to those we use in statutory construction. That is to say that when construing a rule, we consider its plain language and the purpose it was designed to serve." State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126. We do not supply words which have been omitted from the rule, State v. Villar, 2017 VT 109, ¶ 7, 206 Vt. 236, 180 A.3d 588, and we assume that "when a drafter itemizes members of an associated group or series, we may justifiably infer that items not mentioned were excluded by deliberate choice, not inadvertence." In re D.C., 2016 VT 72, ¶ 31, 202 Vt. 340, 149 A.3d 466 (quotation omitted). Given that the PACR Rules specifically limit disclosure of a range of specified types of court records, such as search warrants and affidavits of probable cause, we are not inclined to infer a categorical exemption for a class of records—records in inquest proceedings—nowhere listed in the exceptions to the PACR Rules.

¶ 26. Moreover, the analogies the State seeks to draw with other exceptions from the general rule of public accessibility do not support the categorical exemption the State seeks. Under the PACR Rules, records relating to the issuance of a search warrant are exempt from disclosure only until the date of the return of the warrant; thereafter, they can be withheld from the public only if the court issues an order sealing them. V.R.P.A.C.R. 6(b)(15). Records of the denial of a search warrant are presumptively closed to public access, but the court may issue an order opening access to them. V.R.P.A.C.R 6(b)(16). And we have recently emphasized that affidavits of probable cause in cases in which no probable cause is found are still subject to discretionary public disclosure pursuant to Rule 7(a). In re Affidavit of Probable Cause, 2019 VT 43, ¶¶ 9, 13-14, __ Vt. __, __ A.3d __. None of the PACR rules governing analogous proceedings relied upon by the State establishes the kind of blanket exemption from disclosure sought by the State here.

11

¶ 27. We likewise reject the State's contention that the Rule's exceptions for transcripts, "court reporter's notes, or audio or videotape of a proceeding to which the public does not have access," or for "evidence introduced in a proceeding to which the public does not have access," apply to the trial court's order. V.R.P.A.C.R. 6(b)(30), (31). The order is plainly not a transcript, note, recording of proceedings, or evidence. It is a written decision generated by the court.

¶ 28. Finally, we disagree with the State that the court's order is exempt from disclosure because it is a record to which public access is prohibited by statute. See V.R.P.A.C.R. 6(b)(35). The State has identified no statutes that prohibit public access to this court order, and we are aware of none. While 13 V.S.A. §§ 5131-37 "read broadly provides that the inquest testimonial hearing is secret, and public access is prohibited . . . we have never held secret anything beyond the evidentiary hearing and its content." Rutland Herald, 2012 VT 24, ¶ 61 (Dooley, J., concurring in part, dissenting in part). A transcript of a testimonial hearing held as part of an inquest might be exempt from disclosure under Rule 6(b)(35) because § 5134 requires that the stenographer be "sworn to keep secret all matters and things coming before the judge" and not disclose the minutes of the testimony to anyone but the Attorney General, state's attorney, and judge. However, the fact that there is a statute that ensures secrecy at a testimonial hearing in an inquest proceeding does not render the court order at issue here, which quashed a subpoena issued in the context of an inquest, statutorily exempt from disclosure under Rule 6(b)(35). Because, as the State concedes, none of the exceptions listed in Rule 6(b) expressly apply to the court's order, and we will not read in exceptions, the order is presumptively accessible to the public under Rule 6.

IV. Sealing Pursuant to PACR Rule 7

¶ 29. Even though the trial court's order is not categorically exempt from public disclosure pursuant to PACR Rule 6, the court has discretion to seal the order pursuant to Rule 7. Ordinarily, this would be a discretionary judgment committed in the first instance to the trial court.

12

However, because the trial court could not on this record make the requisite findings to support an order sealing or redacting the order, we conclude that remand is unnecessary.

¶ 30. Rule 7(a) provides that "the presiding judge by order may grant public access to a case record to which access is otherwise closed, may seal from public access a record to which the public otherwise has access or may redact information from a record to which the public has access." The judge may seal or redact a record "upon a finding of good cause specific to the case . . . and exceptional circumstances. In considering such an order, the judge shall consider the policies behind this rule." Id.

¶ 31. The Reporter's Notes to Rule 7 explain that "[t]he standards in In re Sealed Documents will be particularly relevant in deciding whether to exercise the authority under [Rule 7(a)]." Sealed Documents held that "the presumptive right of access to court records . . . may be overcome only by a showing that . . . a substantial threat exists to the interests of effective law enforcement, or individual privacy and safety." 172 Vt. at 161, 772 A.2d at 527. That showing must be made "with specificity as to each document; general allegations of harm are insufficient." Id. (quotation and emphasis omitted). Because "secrecy should extend no further than necessary to protect the interests in confidentiality," the "court must determine whether these interests might be served by deletion of the harmful material." Id. at 162, 772 A.2d at 527 (quotation omitted). Finally, "in rendering a decision, the court must examine each document individually, and make fact-specific findings with regard to why the presumption of access has been overcome." Id.

¶ 32. We have recognized that the PACR Rules incorporate the Sealed Documents standard for whether the public should have access to search warrant materials. Essex Search Warrants, 2012 VT 92, ¶ 20. And we have described Rule 7(a)'s requirements of good cause specific to the case and exceptional circumstances as "practically indistinguishable" from and synonymous with the Sealed Documents requirement of a substantial threat, demonstrated with

13

specificity, to effective law enforcement or individual privacy and safety. Id. ¶ 19. Insofar as the competing policies surrounding public disclosure of inquest materials are analogous to those surrounding public disclosure of search warrant materials, we conclude that the Rule 7(a) standard is synonymous with the Sealed Documents standard in this context as well.

¶ 33. Because the decision to seal or redact pursuant to Rule 7(a) involves the exercise of discretion by the trial court, having concluded that the record here is not categorically exempt from disclosure, we would ordinarily remand for the trial court to determine in the first instance whether to seal or redact the record on account of case-specific factors giving rise to exceptional circumstances. However, a remand is not necessary here because we see no basis in the record that could support an order redacting or sealing the trial court's February 16, 2018 order.[5]

¶ 34. Several factors support this conclusion. The investigation supported by the inquest below had concluded when appellant moved to unseal the order, and the State had announced it would not bring charges as a result. Accordingly, the State has conceded that there is nothing in the court's order that would compromise any ongoing investigation. Moreover, there is no concern that releasing the order will somehow reveal the existence or impair the workings of a necessarily secret law-enforcement investigation: The investigation by the Vermont State Police was announced publicly in a press conference. The order at issue was made in response to briefing that was not itself sealed. And finally, our own review of the sealed order confirms that it contains nothing that could pose a threat to effective law enforcement or individual privacy and safety, or any other information that might potentially warrant sealing or redaction under the Rule 7(a)

---

[5] Again, we note that we are not overriding the trial court's exercise of discretion in reaching this conclusion. The trial court did not undertake a case-specific analysis, having sealed the order based on its conclusion that as a matter of law it was categorically exempt from public disclosure.

14

standard. In fact, the sealed order makes no mention of the substance of any information gathered during the inquest proceeding itself.

¶ 35. For the above reasons, we reverse the trial court's order denying appellant's motion to unseal the February 16, 2018 decision and order that the February 16, 2018 decision be unsealed.

Reversed.

FOR THE COURT:

_____
Associate Justice

¶ 36. **DOOLEY, concurring.** I fully concur in and join the Court's decision and the analysis by which it reached that decision. I write additionally to make two broader points I believe this case raises.

¶ 37. The first involves the nature of the record that appellant, WCAX-TV, sought to make publicly accessible.[6] All public-access issues result from a balance of (1) the need for transparency of judicial decisions, the reasons for decisions, and the inputs to those decisions, including the evidence on which the factual findings are based, against (2) the protection from public disclosure of confidential information to protect privacy or for other reasons. The need for transparency is greatest with respect to a judicial decision, which inevitably has significant consequences for both the prevailing and losing parties, and allows public accountability for the

_____
[6] In almost all judicial-branch public-access cases, the petitioner seeks access to a judiciary record it does not have and has never seen. In this case, WCAX-TV has a copy of the record and seeks a ruling that the judiciary must make the original publicly accessible. Apparently in the exercise of caution, WCAX-TV decided that it could not scan or replicate its copy of the decision and provide it to others although its stated purpose in pursuing this case is to publicize the first decision under the new journalist shield law, 12 V.S.A. § 1615. Whether its caution was required is an important question that is not addressed in the Vermont Rules for Public Access to Court Records but requires a process that does not expose a journalist to a contempt citation to obtain an answer.

fairness of the judicial system. Indeed, secret decisions are the hallmark of an authoritarian government.

¶ 38. Except for proceedings that are entirely closed to public access, for example, a child-protection juvenile case, the denial of all public access to a judicial decision is a rare event. Even for cases that are issued in closed proceedings, court decisions can and are routinely made publicly accessible through substituting initials for names, careful drafting to omit disclosure of confidential information, and redaction of confidential information. The point is that it is extremely rare that a court decision be totally closed from public scrutiny of the final decision and the rationale for the decision. It should take only the most compelling of reasons to enable a judge to seal a court decision from public access.

¶ 39. This is a case in which the confidentiality reason for sealing the subpoena decision had become nonexistent by the time the court decided not to unseal that decision. The investigation into whether a crime had been committed in the killing of the suspected bank robber was completed so release of the subpoena decision could not adversely affect the investigation. The State raised the need for confidentiality only in the hearing on whether to quash the subpoena. By that time, almost all the information about the investigation was in the public record and is in the public printed case filed in this Court. The decision to quash the subpoena is not based on any sensitive or confidential information. I would say clearly that the circumstances present here did not come close to providing a justification for completely sealing a court decision.

¶ 40. My second point relates to what became the State's primary argument at the oral argument to this Court—that an inquest is a secret proceeding. It drew that argument primarily from a decision rendered by this Court early in the twentieth century. See State v. Truba, 88 Vt. 557, 561, 93 A. 293, 295 (1915) ("In accordance with the general policy of the law, the inquest provided for by the act referred to is a secret investigation."); see also Reed v. Allen, 121 Vt. 202,

16

207, 153 A.2d 74, 77 (1959) (noting that statutes "provide for the controlled secrecy of grand jury and inquest proceedings respectively"). Despite that argument, the State agreed that no statute made the subpoena hearing, or the decision on whether to quash the subpoena, nonpublic. In essence, the State seems to have claimed that the procedure for inquest proceedings, including whether they are "secret," is controlled by the common law.

¶ 41. This broad reading of the law applicable to inquests was rejected in State v. Alexander, 130 Vt. 54, 60, 286 A.2d 262, 265 (1971), superseded by statute on other grounds as recognized in State v. Carpenter, 138 Vt. 140, 412 A.2d 285 (1980), where this Court described the inquest procedure with respect to secrecy as follows:

> The statutes do not expressly provide that an inquest is strictly a secret investigatory proceeding. The intention of the legislature concerning secrecy of the product of the inquest is laid out in [13 V.S.A.] § 5134. The language there used is plain and clear that secrecy is mandated. The statute specifically provides that the stenographer "shall be sworn to keep secret all matters and things coming before the judge at such inquest" . . . .
>
>   . . . .
>
>   . . . Although the inquest statutes are not penal and the proceeding is not accusative, the investigation relates to criminal matters to determine the existence of probable cause and are thus to be strictly construed.

The statute referenced in Alexander continues, with some modifications that are not relevant, in the same form today. As the opinion of Justice Robinson holds for the Court, the only part of an inquest proceeding that the statute makes secret is the content of an evidentiary hearing to investigate whether a crime was committed and there is probable cause to commence a prosecution. Ante, ¶ 28; see also Alexander, 130 Vt. at 60, 286 A.2d at 265.

¶ 42. This brings me to the point I made in my separate opinion in Rutland Herald v. Vermont State Police, 2012 VT 24, ¶¶ 51-61, 191 Vt. 357, 40 A.3d 91 (Dooley, J., concurring in part, dissenting in part). I refer the reader to that discussion and provide only a summary here.

17

¶ 43. The inquest of <u>Truba</u> and <u>Alexander</u> is a proceeding in which a prosecutor investigates whether to file a criminal charge by calling witnesses under subpoena issued by the court to give evidence under oath relevant to an alleged crime. Indeed, the term "inquest" means the evidentiary hearing in the early decisions through <u>Alexander</u>. Inquests of this type now happen only rarely. Instead the "inquest" has become primarily a method of obtaining documentary or physical evidence from a witness who will provide the document or physical evidence on receipt of a subpoena for it thereby obviating any need for a hearing of any kind. In some cases, as this one shows, the witness will not turn over the document or physical evidence without contesting the validity of the subpoena.

¶ 44. In the modern "inquest" there is no evidentiary hearing with witnesses testifying to facts relevant to the commission of the crime. If there is an evidentiary hearing, it involves only the validity of the subpoena.

¶ 45. For purposes of public access, the shift in usage has significant consequences. By dropping the part of the procedure that the statute designated as secret, the modern "inquest" has no claim to statutory secrecy and no claim under an exception to public access in the Rules for Public Access to Court Records. Unless sealed under Rule 7 of the Vermont Rules for Public Access to Court Records, all documents filed in the modern "inquest" are publicly accessible. Although the opinion for the Court does not explicitly go this far, this is the necessary consequence of its decision.

¶ 46. In my opinion, the current situation is untenable. Having the Judiciary make ex parte decisions on whether to seal documents is not a desirable process and can too easily become rote. The Legislature needs to decide whether there is a need for a secret investigatory subpoena power, either by amending the inquest statute or by generally authorizing the issuance of investigatory subpoenas in the executive branch, without court involvement where there is no

18

dispute as to the validity of the subpoena.  The Legislature created such an authority for consumer-fraud cases, see 9 V.S.A. § 2460, and can authorize it more broadly.  By keeping the power within the executive branch, the Public Records Act will apply to these records, with its exception from public access for "records dealing with the detection and investigation of crime."

_____

Associate Justice (Ret.), Specially Assigned